NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 05a0705n.06
Filed: August 15, 2005

No. 03-4603

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | |
|---|---|
| ELIZABETH TILLEY, | ) |
| | ) |
| Petitioner-Appellant, | ) ON APPEAL FROM THE |
| | ) UNITED STATES DISTRICT |
| v. | ) COURT FOR THE NORTHERN |
| | ) DISTRICT OF OHIO |
| MICHAEL CHERTOFF; ALBERTO GONZALES; | ) |
| BARRY HALFHILL, | ) |
| | ) |
| Respondents-Appellees. | |

Before:        BOGGS, Chief Judge; COOK, Ciruit Judge, and BEER, District Judge.[*]

        PER CURIAM.  Petitioner Elizabeth Tilley, a former permanent resident alien who was deported for various crimes and who reentered the United States illegally, originally sought to have us reverse the district court's dismissal of her petition for a writ of habeas corpus for review of the INS order reinstating her deportation.  She contended that, because her original deportation order was non-reviewable under 8 U.S.C. § 1252(a)(2)(C), an appellate court also could not review an order reinstating the original deportation order pursuant to 8 U.S.C. § 1231(a)(5), and

_____

        [*] The Honorable Peter Beer, United States District Judge for the Eastern District of Louisiana, sitting by designation.

-1-

consequently that the district court had habeas jurisdiction. While this case was pending on appeal, Congress passed the REAL ID Act of 2005 (RIDA), Pub. L. No. 109-13, Div. B, 119 Stat. 231, 302. In light of changes RIDA made to our review of immigration removal orders, we asked for supplementary briefing. Both parties now argue that RIDA gives us jurisdiction. In her supplementary brief, Tilley refocused her appeal to contend that (1) the regulations governing reinstatement orders are unconstitutional; (2) the reinstatement procedures violate due process; (3) the reinstatement order is invalid because it does not specify the time and place Tilley reentered the United States; and (4) the reinstatement order is invalid because the predicate deportation order, which Tilley claims we can review, was unlawful. We agree that the RIDA implicitly, though not explicitly, gives us jurisdiction to review Tilley's reinstatement order. However, we hold that the RIDA does not give us jurisdiction to consider the original deportation order. We also hold that the reinstatement regulations are constitutional and that the challenged procedures do not violate due process.

**I**

Tilley is an English citizen who entered the United States in May 1975 as a nonimmigrant fiancée authorized to remain in this country until August 21, 1975. On August 12, 1975, her immigrant status changed to lawful permanent resident.

Over the next fourteen years, she was convicted of a number of crimes, including two crimes of moral turpitude, as well as an aggravated felony and a drug trafficking offense. On April 13, 1994, while she was in prison on the drug trafficking charge, the Immigration and Naturalization

Service (INS) issued an Order to Show Cause, alleging that Tilley was deportable on the grounds of these offenses as well as a firearms offense. At the hearing held in February 1996, Tilley contested the firearms charge, and the Immigration Judge continued the proceeding until May 1996 to give the Government time to establish this charge. Removing the charge was important to Tilley because a firearms conviction would have made her ineligible for a discretionary INA § 212(c) waiver of deportation. 8 U.S.C. § 1182(c) (1994).

Unfortunately for Tilley, on April 24, 1996, the Antiterrorism and Effective Death Penalty Act (AEDPA) became law and precluded judicial review of final deportation orders against individuals deportable by reason of having committed certain specified criminal offenses, including ones for which Tilley had been convicted. AEDPA § 440(a), 8 U.S.C. 1105a(a)(10) (repealed). At the May 1996 continued hearing, the INS withdrew the firearms allegation. However, the Immigration Judge still found Tilley deportable on the other charges and held that AEDPA now required him to deny her request for discretionary waiver of deportation. Tilley appealed, and the Bureau of Immigration Affairs (BIA) dismissed the appeal in July 1997, finding her ineligible for discretionary relief under INA § 212(c). Tilley did not appeal that decision to this court. She claims that she never received notice of the BIA decision until agents showed up at her house to deport her.

Tilley was deported from the United States in November 1999. She reentered the country illegally in January 2000. She took no action to reopen her deportation proceedings until she was arrested in February 2003. On February 12, 2003, the INS notified Tilley that it intended to reinstate the former deportation order. Tilley did not contest the notice of intent to reinstate and would not acknowledge receipt of the document. The deportation order was reinstated on February 13, 2003.

On September 17, 2003, Tilley filed a pro se petition for a writ of habeas corpus seeking review of the reinstatement order. After responses from the Government, a status conference, and appointment of counsel, Tilley filed an amended habeas petition on November 10, 2003. On December 1, 2003, the district court dismissed the habeas petition for lack of jurisdiction. Tilley timely filed this appeal.

**II**

As a threshold matter, we address whether RIDA gives us jurisdiction over Tilley's petition for a writ of habeas corpus to review her reinstatement order. RIDA added a new provision, codified at 8 U.S.C. § 1252(a)(5), making a petition for review to an appellate court the sole means of review of an order of removal issued under the Immigration and Naturalization Act. RIDA went into effect immediately, and applies to "cases in which the final administrative order of removal, deportation, or exclusion was issued before, on, or after the date of the enactment of this division." RIDA § 106(b), 119 Stat. 311. The Act also instructs the district courts to transfer any habeas petitions *pending in the district court* on the date of the enactment of the Act to the appropriate circuit court to be treated as a petition for review, without regard to whether the habeas petition had been filed within thirty days of the final order of removal, as required for petitions for review under 8 U.S.C. § 1252(b)(1). RIDA § 106(c), 119 Stat. 311.

The Act does not make clear whether we have jurisdiction over an appeal of a dismissal of a petition for habeas pending before us at the time of its enactment. The section that the parties rely upon to make this claim, RIDA § 106(c), speaks of habeas petitions pending before the district court. Nevertheless, we take jurisdiction for three reasons. First, the Third Circuit, the only circuit to have

–4–

confronted this precise question, held that it did have jurisdiction over cases pending before it at the time RIDA was passed. *Bonhometre v. Gonzales*, __ F.3d __, __, No. 04-2037, 2005 WL 1653641, at *2 (3d Cir. July 15, 2005) ("In the Real ID Act, however, the Congress was silent as to what was to be done with an appeal from a district court habeas decision that is now pending before a court of appeals. Despite this silence, it is readily apparent, given Congress' clear intent to have all challenges to removal orders heard in a single forum (the courts of appeals) . . . that those habeas petitions that were pending before this Court on the effective date of the Real ID Act are properly converted to petitions for review and retained by this Court. We thus generally have jurisdiction to consider such a petition pursuant to section 242(a) of the INA."); *DiPeppe v. Ridge*, No. 04-3443, 2005 WL 1719343, at *2 (3d Cir. July 25, 2005) (unpublished) ("[W]e are to consider challenges to a final order of removal that (1) were filed as appeals from a district court's denial of a writ of habeas corpus, and (2) were pending before us when the Real ID Act was enacted, to be petitions for review."). Second, the RIDA conference report notes that the intent of RIDA is to "give every alien one day in the court of appeals . . . ." H.R. Rep. No. 109-72, at 175 (2005). If we refused jurisdiction here simply because Tilley had the misfortune of having filed her petition too soon, we would be avoiding the duty to review that Congress has placed upon us. Finally, if we did refuse jurisdiction, we would do so on the pre-RIDA grounds that we cannot treat Tilley's petition for habeas corpus as a petition for review because she did not file the habeas petition within thirty days of the issuance of her reinstatement order, as required by 8 U.S.C. § 1252(b)(1) for petitions for review. *See Taniguchi v. Schultz*, 303 F.3d 950, 956 (9th Cir. 2002) (transfer denied because petition not timely filed). However, in RIDA § 106(c), Congress also instructed that this time

limitation should be ignored for pending habeas petitions. Under these circumstances, we believe that it would work an injustice that Congress did not intend were we to refuse jurisdiction over a case pending before us for exactly the reason Congress told us to overlook in cases pending before district courts.

Having held that we have jurisdiction, we must first address Tilley's argument that the reinstatement procedure is unconstitutional. A reinstatement order is a new, final, purely administrative order that reinstates, but is separate from, the original deportation order. Issued by an immigration officer without possibility of a hearing before an immigration judge, the reinstatement order requires that the officer establish (1) that the alien was subject to a prior order of removal, (2) that the alien subject to reinstatement of deportation is the same person who was previously deported, and (3) that the alien unlawfully reentered the United States. 8 C.F.R. § 241.8(a).

Several circuits have split on the constitutionality of the reinstatement procedures under 8 C.F.R. § 241.8. The First and Eighth Circuits have held that these regulations fall within the discretion of the Attorney General. *Lattab v. Ashcroft*, 384 F.3d 8, 19-20 (1st Cir. 2004); *Alvarez-Portillo v. Ashcroft*, 280 F.3d 858, 866 (8th Cir. 2002). However, in November 2004, the Ninth Circuit held the regulations unconstitutional. *Morales-Izquierdo v. Ashcroft*, 388 F.3d 1299 (9th Cir. 2004). The *Morales-Izquierdo* court argued that because the INA provision governing reinstatement procedures, § 241(a)(5), 8 U.S.C. § 1231(a)(5), does not specify a procedure for removal, the general removal provisions found in INA § 240(a), 8 U.S.C. § 1229a(a), must be applied. That latter provision provides that "[a]n immigration judge shall conduct all proceedings

for deciding the inadmissibility or deportability of an alien." § 240(a)(1). As the regulations implementing § 241(a)(5) do not permit review by an immigration judge, they violate the requirements of § 240(a)(1). *Morales-Izquierdo*, 388 F.3d at 1304.

We do not agree. Section § 241(a)(5) reads in full:

If the Attorney General finds that an alien has reentered the United States illegally after having been removed or having departed voluntarily, under an order of removal, the prior order of removal is reinstated from its original date and *is not subject to being reopened or reviewed, the alien is not eligible and may not apply for any relief under this Act*, and the alien shall be removed under the prior order at any time after the reentry.

(Emphasis added.) Section 241(a)(5) replaces INA § 242(f), 8 U.S.C. § 1252(f) (repealed 1996), under the implementing regulations of which aliens could contest their reinstatement orders before an immigration judge. However, INA § 242(f) did not contain the language italicized in the quotation above. If we assume that § 241(a)(5) implicitly intends for review by an immigration judge in accordance with § 240(a)(1), then the language "the alien is not eligible and may not apply for any relief under this Act" would seem to have no meaning. We read § 241(a)(5) to instruct the Attorney General to adopt regulations that (1) do not permit the alien to challenge the prior order of removal; (2) do not permit the alien to apply for any relief under the Act; and (3) that make the alien deportable at any time after reentry. If the regulations permitted the alien to seek review according to the provisions of § 240(a)(1), that would violate the second of Congress's explicit instructions. By contrast, the regulations promulgated in 8 C.F.R. § 241.8(a) meet all of the requirements of § 241(a)(5). Therefore, we do not see an ambiguity that requires us to review the agency's implementation of its governing statute. *See Food and Drug Admin. v. Brown &*

–7–

*Williamson Tobacco Corp.*, 529 U.S. 120, 132 (2000); *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 843 (1984).

We also hold that the reinstatement procedure offers adequate due process. A reinstatement order is just that: it reinstates a prior order. As long as the alien went through a proper deportation proceeding, the question of the alien's deportability has been resolved. The reinstatement order asks only three factual questions. A judge is not needed to decide whether the alien was subject to a prior order of removal, nor whether the alien deported is the same alien as the one subject to reinstatement, nor whether the alien re-entered the country illegally. 8 C.F.R. § 241.8(a). And if the alien asserts that any of these decisions was incorrect, she may appeal the immigration officer's findings directly to the circuit court. To plead for additional process in this procedure is to forget how limited is its scope. The reinstatement order does not concern itself with the legality of the original deportation nor with any other questions of law. Furthermore, as we discuss next, Tilley has "not shown [s]he was prejudiced by the claimed constitutional violations. Such proof of prejudice is necessary to establish a due process violation in an immigration hearing." *Warner v. Ashcroft*, 381 F.3d 534, 539 (6th Cir. 2004); *accord Garcia-Marrufo v. Ashcroft*, 376 F.3d 1061, 1064 (10th Cir. 2004); *Lopez v. Heinauer*, 332 F.3d 507, 512-13 (8th Cir. 2003); *Ojeda-Terrazas v. Ashcroft,* 290 F.3d 292, 302 (5th Cir. 2002). Therefore, we do not find that the reinstatement procedure has violated Tilley's due process.

We now turn to the merits of Tilley's petition. Tilley has contested none of the immigration officer's findings. She does not dispute that she was subject to a prior order of removal, that it was she who was deported, or that she reentered illegally. The most she does to address this issue is to

argue that the order is invalid because it does not state where and when she reentered. We fail to see why such specific details matter. Tilley was deported. She is now back in the United States. Therefore she reentered at a time after her deportation and at a point at the border of our country. Those two facts are the only relevant ones, unless Tilley chooses to assert that she did not reenter illegally, which she has not done.

Instead of addressing the validity of the reinstatement order itself, Tilley wants us to find that her underlying deportation order was illegal because she allegedly did not receive notice of the BIA's decision on appeal and because she was denied the right to apply for discretionary review under INA § 212(c). We will not consider the merits of these claims because we do not have jurisdiction over her original deportation order. As both parties acknowledged in their initial briefs, and as the district judge pointed out in his order dismissing Tilley's petition for a writ of habeas corpus, the only order before us is the reinstatement order. Indeed, the basis of Tilley's appeal was that we did not have jurisdiction over her reinstatement order *precisely* because we had no jurisdiction over her initial deportation order. At the time Tilley filed her petition, and at the time she filed this appeal, and at the time we heard oral argument, we had by statute and according to unquestioned case law, absolutely no jurisdiction over Tilley's original deportation order. *See*, *e.g.*, *Arreola-Arreola v. Ashcroft*, 383 F.3d 956, 963 (9th Cir. 2004); *Garcia-Marrufo*, 376 F.3d at 1063-64; *Duran-Hernandez v. Ashcroft,* 348 F.3d 1158, 1162 n.3 (10th Cir. 2003); *Arevalo v. Ashcroft*, 344 F.3d 1, 9 (1st Cir. 2003); *Padilla v. Ashcroft*, 334 F.3d 921, 924 (9th Cir. 2003); *Lopez*, 332 F.3d at 510-11; *Avila-Macias v. Ashcroft*, 328 F.3d 108, 110 (3d Cir. 2003); *Gomez-Chavez v. Perryman*, 308 F.3d 796, 801 (7th Cir. 2002); *Bejjani v. INS*, 271 F.3d 670, 674 (6th Cir. 2001); *Ojeda-*

*Terrazas*, 290 F.3d at 295; *Gallo-Alvarez v. Ashcroft*, 266 F.3d 1123, 1128 (9th Cir. 2001);

*Velasquez-Gabriel v. Crocetti*, 263 F.3d 102, 105 (4th Cir. 2001); *Castro-Cortez v. INS*, 239 F.3d

1037, 1043-44 (9th Cir. 2001); (all holding that circuit courts reviewing a reinstatement order have

no jurisdiction to consider the original deportation order).  Since this order was never before us, the

RIDA cannot give us jurisdiction over it.

Nevertheless, Tilley would have us in the alternative follow the lead of the Ninth Circuit and

send the question of the underlying order back to the district court on habeas.  *See Arreola-Arreola*

*v. Ashcroft*, 383 F.3d 956, 959 (9th Cir. 2004) (holding that a circuit court considering a challenge

to a reinstatement order could transfer to the district court under habeas a challenge to the due

process of the original deportation order).  If we were to do so, the district court would be obliged

to transfer the case back to us under RIDA.  As it happens, Tilley has already filed a petition for

habeas on her underlying deportation order, and the district judge has already transferred the case

to this court. *Tilley v. Ridge*, No. 1:03CV2463 (N.D. Ohio 2005).  Consequently, we see no reason

to create duplicate litigation.

### III

For the foregoing reasons, we **DENY** Tilley's petition for review of her reinstatement order.