

2009 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-20-2009

# Ponta-Garcia v. Atty Gen USA

Precedential or Non-Precedential: Precedential

Docket No. 07-2551

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2009

Recommended Citation

"Ponta-Garcia v. Atty Gen USA" (2009). *2009 Decisions.* Paper 1801.
http://digitalcommons.law.villanova.edu/thirdcircuit_2009/1801

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2009 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 07-2551

RENATO MANUEL DA COSTA PONTA-GARCIA,
Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,
Respondent

PETITION FOR REVIEW OF A DECISION OF
UNITED STATES IMMIGRATION AND CUSTOMS
ENFORCEMENT

Argued:  January 15, 2009

Before: SLOVITER, BARRY, and SILER, JR.,* Circuit Judges

(Opinion Filed: February 20, 2009)

Michael P. DiRaimondo, Esq. (Argued)
DiRaimondo & Masi
401 Broadhollow Road
Suite 302
Melville, NY 11747-0000

*Counsel for Petitioner*

---

* The Honorable Eugene E. Siler, Jr., Senior Circuit Judge,
United States Court of Appeals for the Sixth Circuit, sitting by
designation.

Andrew Oliveira, Esq. (Argued)
United States Department of Justice
Office of Immigration Litigation
P.O. Box 878
Ben Franklin Station
Washington, DC 20044-0000

*Counsel for Respondent*

---

OPINION OF THE COURT

---

BARRY, Circuit Judge

Petitioner contests the reinstatement of a twenty-year old order of removal, challenging both its legal and factual bases. Given the nature of the reinstatement procedure, the record before us is, not surprisingly, sparse and, in the ordinary case, might nonetheless be sufficient for us to perform the full judicial review we are required to perform. But petitioner, with some support in even that sparse record, has raised questions which, with further development of the facts, could lead to a different result. He also challenges the regulation that applies to a reinstatement determination, a challenge we reject. We will, however, vacate the reinstatement determination itself and remand so that the relevant facts can be developed and the open questions answered.

## I. Factual Background

Petitioner Renato Manuel Da Costa Ponta-Garcia ("Ponta-Garcia") is a native and citizen of Portugal. In 1978, at age nine, he entered the United States with his family as a lawful permanent resident. Shortly thereafter, he and his family left the country for Bermuda, apparently relinquishing their lawful permanent resident status. In 1983, now age fourteen, Ponta-Garcia returned, with his family, to the United States as a visitor, and overstayed his visa. Removal proceedings were initiated

against him and his family in 1985.

In 1987, an immigration judge found that the Ponta-Garcia family was subject to removal, and granted them the right to depart voluntarily by July 31, 1987. They did not do so, and Ponta-Garcia asserts that the order of removal was judicially invalidated at some later point. Some support for that assertion is the fact that on October 30, 1990, Ponta-Garcia applied for a "New Alien Registration Receipt Card," which application was granted in early 1991. It was noted on the application, presumably by the examining immigration officer, that Ponta-Garcia's original I-151 (green card) was "seen and destroyed on 1-4-91." The assertion is also supported by the fact that in April 1992, Ponta-Garcia went to Canada to attend a wedding, and reentered the United States four days later using his green card. This reentry occurred without incident. Finally, we note, it does not appear that any member of his family has been removed pursuant to the 1987 order of removal over these many years.

On March 2, 1995, Ponta-Garcia and his brother, Helder, filed a "Complaint for Declaratory and Injunctive Relief and Petition for Writ of Habeas Corpus (with Stay of Deportation)" in the U.S. District Court for the District of Connecticut, naming the Department of Justice and John P. Weiss, the officer in charge of the Immigration and Naturalization Service in Hartford, Connecticut, as defendants. A stay of deportation was granted that same day by the Hon. Dominic J. Squatrito, a motion for the review of bond was denied on March 13, 1995, and, for reasons unknown, the case was dismissed on March 28, 1995.

It may well have been the filing of that complaint that prompted the investigation of Ponta-Garcia's status and the affidavit of his girlfriend attesting to his trip to and from Canada in April 1992. Based on that affidavit, on March 16, 1995, a warrant for Ponta-Garcia's deportation was issued with the notation that he was "to be put in proceedings anew." JA17. (Query whether "proceedings anew" would have been necessary had the removal order not been invalidated.)

3

In any event, for twelve years after the warrant for deportation issued and for fifteen years after Ponta-Garcia reentered from Canada, nothing relevant to his immigration status – at least, nothing of which we know – appears to have happened.  Then, in April 2007, Immigration and Customs Enforcement ("ICE") issued Ponta-Garcia a notice that it intended to reinstate the by-then twenty-year old order of removal, perhaps having been roused after all of those years when notified of one or more of Ponta-Garcia's run-ins with the law.  The stated grounds for reinstatement were that Ponta-Garcia voluntarily departed the United States pursuant to an order of removal when he left the country for the visit to Canada, and that he illegally reentered the United States four days later.  Acting through an immigration officer, ICE determined that Ponta-Garcia's order of removal was subject to reinstatement, and thus that he should be removed.  This petition followed.

## II.  Discussion

In 1996, Congress changed the manner in which reinstatements of orders of removal are handled.  In relevant part, the new statute reads:

> If the Attorney General finds that an alien has reentered the United States illegally after having been removed or having departed voluntarily, under an order of removal, the prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed, the alien is not eligible and may not apply for any relief under this Act, and the alien shall be removed under the prior order at any time after the reentry.

8 U.S.C. § 1231(a)(5).

Under the relevant regulation interpreting the statute, an alien subject to reinstatement "has no right to a hearing before an immigration judge."  8 C.F.R. § 241.8(a).  To effectuate reinstatement, an immigration officer must find that (1) the alien

4

was subject to a prior order of removal; (2) the alien is the same person as the one named in the prior order (*i.e.*, confirmation of identity) and; (3) the alien unlawfully reentered the country. *See id.* § 241.8(a)(1)-(3). In determining whether the alien unlawfully reentered the country, the immigration officer "shall consider all relevant evidence, including statements made by the alien and any evidence in the alien's possession. The immigration officer shall attempt to verify an alien's claim, if any, that he or she was lawfully admitted . . . ." *Id.* § 241.8(a)(3). The regulation also provides the alien with notice, and allows for him or her to make a "written or oral statement contesting the determination." *Id.* § 241.8(b).

## A.     The Challenge to the Reinstatement Procedures

Ponta-Garcia challenges the reinstatement procedures on two grounds: first, he asserts that the regulation promulgated by the Attorney General constitutes an unreasonable and thus impermissible construction of 8 U.S.C. § 1231(a)(5); and second, he asserts that the regulation violates due process.

### 1.     The Regulation Is A Reasonable Construction of the Statute

Every court of appeals to have considered the issue has concluded that the regulation constitutes a reasonable construction of 8 U.S.C. § 1231(a)(5).[1] We agree. Under *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842 (1984), we are required to determine, as an initial matter, whether Congress "has directly spoken to the precise question at issue." Congress has not done so here, for

---

[1] *See Morales-Izquierdo v. Gonzales*, 486 F.3d 484, 493-94 (9th Cir. 2007) (en banc); *Lorenzo v. Mukasey*, 508 F.3d 1278, 1283-84 (10th Cir. 2007); *Ochoa-Carrillo v. Gonzales*, 437 F.3d 842, 846 (8th Cir. 2006); *De Sandoval v. Attorney General*, 440 F.3d 1276, 1280-83 (11th Cir. 2006); *Tilley v. Chertoff*, 2005 WL 1950796, at *3 (6th Cir. Aug. 15, 2005); *Lattab v. Ashcroft*, 384 F.3d 8, 17-20 (1st Cir. 2004).

the statute does not specify the procedures to be used to reinstate a prior order of removal. Accordingly, we proceed to the second prong of *Chevron*, and determine whether the regulation promulgated by the Attorney General is "based on a permissible construction of the statute." *Id.* at 843.

Ponta-Garcia's primary complaint is that the regulation does not provide for a hearing before an immigration judge. *See* 8 C.F.R. § 241.8(a) (providing that an alien subject to a reinstatement determination "has no right to a hearing before an immigration judge"). He argues that the statutory scheme must be interpreted to provide for a hearing by an immigration judge because of the exclusivity clause of 8 U.S.C. § 1229a. Indeed, § 1229a does state that "[a]n immigration judge shall conduct all proceedings for deciding the inadmissibility or deportability of an alien." Moreover, § 1229a(3) provides that "[u]nless otherwise specified under this chapter, a proceeding under this section shall be the sole and exclusive procedure for determining whether an alien may be admitted to the United States, or, if the alien has been so admitted, removed from the United States."

On their face, these statutory provisions would appear to govern reinstatement determinations, as such determinations involve the "deportability of an alien" and can result in his or her "remov[al] from the United States." *Id.* However, in line with the other courts that have considered this issue, *see supra* note 1, we conclude that 8 U.S.C. § 1231(a)(5), the sole statute dealing with reinstatement determinations, is an "otherwise specified" exception to the exclusivity clause.

Section 1231(a)(5) makes quite clear Congress's intent to expedite and streamline reinstatement determinations. *See* 8 U.S.C. § 1231(a)(5) (providing that an order of removal is "not subject to being reopened or reviewed" at a reinstatement determination, disallowing "relief under this chapter," and declaring that "the alien shall be removed under the prior order at any time after the reentry"). The Attorney General concluded that the goal of streamlining would be advanced by providing previously-removed aliens with review only by an immigration officer.

This conclusion is reasonable in light of the circumstances presented by reinstatement determinations: aliens subject to reinstatement have already been ordered removed, and thus have already been provided with the requisite procedures and review. The risk of error is much reduced under such circumstances, and the regulation properly reflects this reality. Section 1231(a)(5) has reasonably been interpreted as an exception to § 1229a.[2]

## 2. The Regulation Does Not Violate Due Process

We are similarly unpersuaded by Ponta-Garcia's argument that the regulation violates due process.[3] As with the

_____

[2] We note that the Attorney General was well aware of the argument that a reinstatement determination should be made by an immigration judge. The Federal Register's commentary discussing the regulation states that "[s]everal commenters suggested that aliens caught illegally reentering the United States after removal should be provided a hearing before an immigration judge. They expressed concern that issues such as identity and the propriety of the earlier removal order would not be addressed." Reinstatement of Removal Orders Against Aliens Illegally Reentering, 62 Fed. Reg. 10312, 10326 (Mar. 6, 1997). The Attorney General rejected these concerns, and concluded that the regulation "adequately addresses the concerns expressed by the commenters." *Id.* This conclusion was a legitimate and reasonable construction of the statute entitled to *Chevron* deference. Indeed, when taking into consideration congressional intent to streamline the procedures, this may well have been the *more* reasonable construction of the statute.

[3] The government argues that Ponta-Garcia has not shown that he was prejudiced by the procedures, and thus cannot challenge them on due process grounds. Other courts have taken this approach when faced with petitioners who did not dispute "the facts necessary to warrant reinstatement of the original deportation order." *Lattab*, 384 F.3d at 20-21(declining to reach the due process issue because petitioner could not show prejudice because he did not dispute "the facts necessary to warrant reinstatement of

*Chevron* issue discussed above, the gravamen of Ponta-Garcia's due process claim is that the regulation does not provide for a hearing before an immigration judge.

The delegation of authority to immigration officers, as opposed to immigration judges, is not of constitutional import. Indeed, there is nothing constitutionally special about immigration judges; they are wholly a creature of statute. *See, e.g.*, *Lopez-Telles v. INS*, 564 F.2d 1302, 1303 (9th Cir. 1977) ("Immigration judges . . . are creatures of statute, receiving some of their powers and duties directly from Congress, and some of them by subdelegation from the Attorney General.") (internal citations omitted). While we may not "grant immigration inspectors the same fact-finding deference as we would immigration judges, there is a presumption that immigration inspectors are not biased." *Gomez-Chavez v. Perryman*, 308 F.3d 796, 802 (7th Cir. 2002).

Moreover, the regulation does, in fact, provide more than just minimal procedural protections. Under the regulation, the immigration officer is required to determine whether (1) the alien was subject to a prior order of removal; (2) the alien is the same person as the one named in the prior order and; (3) the alien unlawfully reentered the country. *See* 8 C.F.R. § 241.8(a)(1)-(3). Additionally, the regulation requires the immigration officer to "consider all relevant evidence" in making the above determinations. *Id.* § 241.8(a)(3). The alien is also specifically given an opportunity to be heard, as the immigration officer must consider "statements made by the alien and any evidence in the alien's possession," *id.*, and must also allow the alien to make a "written or oral statement contesting the determination," *id.* § 241.8(b). Remembering that a

---

the original deportation order"); *De Sandoval*, 440 F.3d at 1285 (same).

The situation here is much different. Ponta-Garcia does dispute the factual underpinnings of the reinstatement order and has also linked the allegedly erroneous determination to the inadequacy of the procedures.

reinstatement determination can only be applied to a person who was already subject to a prior order of removal with its attendant pre- and post-order protections, there is no issue of constitutional concern.

Finally, full judicial review is available to an alien adjudged removable following the reinstatement procedures at issue. (*See* Respondent's Br. 33 ("Aliens subject to reinstatement have the opportunity for full judicial review of the determination in the court of appeals.").) *See also United States v. Charleswell*, 456 F.3d 347, 353 (3d Cir. 2006); *Ponta-Garc[i]a v. Ashcroft*, 386 F.3d 341, 342 (1st Cir. 2004) ("An order reinstating an earlier order of deportation is subject to review. . . ."); 8 U.S.C. § 1252 (providing for judicial review of final orders of removal); *Duran-Hernandez v. Ashcroft*, 348 F.3d 1158, 1162 n.3 (10th Cir. 2003) (finding that 8 U.S.C. § 1252 covers review of reinstatement orders).

One caveat, however. The original order of removal is "not subject to being reopened or reviewed" at the time of the reinstatement determination or on judicial review. 8 U.S.C. § 1231(a)(5). While this language prohibits relitigation of the merits of the original order of removal, it does not prohibit an examination of whether the original order was invalidated, or preclude judicial review of whether ICE met its obligations in making the reinstatement determination. As we will now address, it is for precisely these reasons that we are returning this case for further factual development. *See, e.g.*, *Arevalo v. Ashcroft*, 344 F.3d 1, 9 (1st Cir. 2003) ("While we cannot revisit the validity of the original deportation order, we do have the authority to determine the appropriateness of its resurrection."). The provision of this judicial review, as well as the adequate procedures set forth in the regulations, persuade us that, separate and apart from whether Ponta-Garcia will ultimately prevail on the merits of his claim, the reinstatement regulation is constitutional.[4]

---

[4] The only courts to have reached this issue are in agreement. *See Morales-Izquierdo*, 486 F.3d at 495-98 ("Given the

**B.    The Claim on the Merits**

Ponta-Garcia argues that even if the reinstatement procedures pass muster, they should not have been applied to him.  He claims not only that the 1987 order of removal was invalidated by a court, but claims as well that he did not reenter the country illegally when he returned from his four-day visit to Canada in 1992 with what he says was a valid green card.  If he is correct as to either or both of these claims – and there is some support for each – serious concerns are raised.

---

narrow and mechanical determinations immigration officers must make and the procedural safeguards provided by [the regulations], the risk of erroneous deprivation is extremely low. . . . While the regulation does not offend due process, we leave open the possibility that individual petitioners may raise procedural defects in their particular cases."); *Lorenzo*, 508 F.3d at 1284; *Tilley*, 2005 WL 1950796, at \*4 ("We also hold that the reinstatement procedure offers adequate due process. . . . The reinstatement order asks only three factual questions.  A judge is not needed to decide whether the alien was subject to a prior order of removal, nor whether the alien deported is the same alien as the one subject to reinstatement, not whether the alien re-entered the country illegally.  And if the alien asserts that any of these decisions was incorrect, she may appeal the immigration officer's findings directly to the circuit court.  To plead for additional process in this procedure is to forget how limited is its scope.").

Other courts have discussed this issue in dicta, and indicated mixed feelings.  *Compare Alvarez-Portillo v. Ashcroft*, 280 F.3d 858, 867 (8th Cir. 2002) (declining to reach the issue, but stating that the "streamlined notice and opportunity to be heard afforded illegal reentrants under [the regulations] seem quite appropriate when the only issues to be determined are those establishing the agency's right to proceed under [the reinstatement statute") *with Lattab*, 384 F.3d at 21 n.6 (declining to reach the issue, but commenting that "[t]he summary reinstatement process offers virtually no procedural protections," and suggesting that appellate review "may not be adequate when the alien has not been given a meaningful opportunity to develop an administrative record").

The Court of Appeals for the First Circuit addressed the nearly-identical situation of Ponta-Garcia's brother, Helder, and recognized these same concerns. Helder, subject to the same order of removal, and, much later, subject to reinstatement of that order, challenged the reinstatement in the Court of Appeals. *See Ponta-Garc[i]a*, 386 F.3d 341. The Court found that it lacked jurisdiction because the petition for review was untimely, *see id.* at 341-42, but noted that the issues were potentially meritorious and "encourage[d] the respondent to reexamine the case with care." *Id.* at 343.

> If the representations made by [Helder's] counsel are accurate, he would appear to have a strong case on the merits. [Helder] contends that he did not voluntarily depart under the prior deportation order but, rather, left the country temporarily to attend a wedding. He also contends that he did not reenter the country illegally, but, rather, was inspected and allowed entry. If either of these assertions is correct, the reinstatement provision would appear to be inapplicable by its express terms. Moreover, the petitioner contends that the 1987 deportation order was invalidated by the federal district court in Connecticut at some point after his reentry. If that is so, the administrative reinstatement of that order would appear problematic. *See Chacon-Corral v. Weber*, 259 F.Supp.2d 1151, 1164 (D.Col. 2003) ("Because deportation for unauthorized reentry under INA § 241(a)(5) is under the original order of deportation, a determination that the original order was invalid renders § 241(a)(5) inapplicable in a given case."). Particularly in light of the due process concerns that can arise in this context. . . ., we encourage the respondent to reexamine the case with care.

*Id.* (citations omitted).

Just as the First Circuit was troubled by the brother's claims, we are troubled by Ponta-Garcia's claims and thus return

11

the matter from whence it came for a careful consideration of those claims.[5]   In so doing, we are cognizant of the fact that Congress passed 8 U.S.C. § 1231(a)(5) to streamline and expedite reinstatement determinations.  In most cases, a reinstatement determination will be simple, and the underlying grounds for reinstatement (the existence of an order of removal, identity confirmation, and the fact of illegal reentry) will not be contested.  However, in circumstances such as these, where the alien claims that he contested the bases for reinstatement and offered some support for why he may be correct, the regulation requires that the immigration officer "consider [the alien's] evidence" and "attempt to verify an alien's claim."  8 C.F.R. § 241.8(a)(3).  As the government tells us in its brief on appeal, "ICE has the necessary expertise to determine the validity of Petitioner's assertions."  (Respondent's Br. 25.)  Assuming that Ponta-Garcia contested before the immigration officer the notice of intent to reinstate the prior order of removal, more is required than it appears was done here.

### III.  Conclusion

For the foregoing reasons, we will vacate the order of reinstatement and remand to ICE for further proceedings in accordance with this Opinion.

---

[5]  We suggest that on remand some consideration be given to whether leaving the country for a four-day personal trip constitutes "depart[ing] voluntarily, *under an order of removal*," as required by the statute.  8 U.S.C. § 1231(a)(5) (emphasis added).