NOT RECOMMENDED FOR PUBLICATION
File Name: 13a0893n.06

No. 12-3900

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| GIOVANNI RUIZ RUIZ, | ) | |
| | ) | |
| Petitioner, | ) | ON PETITION FOR REVIEW OF A |
| | ) | FINAL ORDER OF THE BOARD OF |
| v. | ) | IMMIGRATION APPEALS |
| | ) | |
| ERIC H. HOLDER, JR., Attorney General, | ) | |
| | ) | OPINION |
| Respondent. | ) | |
| | ) | |

**Before: BOGGS, CLAY, and GILMAN, Circuit Judges.**

**RONALD LEE GILMAN, Circuit Judge.** Giovanni Ruiz Ruiz seeks review of a July 2, 2012 order, issued by the Department of Homeland Security (DHS), reinstating an immigration judge's (IJ's) February 23, 2001 order of removal against him. The 2012 order resulted from Ruiz's illegal reentry into the United States in 2005 and had the effect of reviving the IJ's prior order of removal. Ruiz contends that the reinstatement order is unconstitutional because DHS failed to allow him adequate time to object to the reinstatement, in violation of his due process rights. He also argues that DHS improperly denied him the assistance of his retained counsel. For the reasons set forth below, we **DENY** the petition for review.

**I. BACKGROUND**

Ruiz, who is a native and citizen of Mexico, was arrested in June 2012 by the Michigan State Police for operating a motor vehicle under the influence of alcohol. (AR 17) This was not Ruiz's first encounter with law enforcement. Fourteen years earlier, Ruiz was convicted in Michigan state

court of operating a motor vehicle while intoxicated and received a sentence of six days in jail and twelve months of probation. (*Id.*) The Immigration and Naturalization Service subsequently served Ruiz with a Notice to Appear. (*See* AR 2) An IJ in Detroit, Michigan concluded the proceedings against Ruiz with a voluntary departure order issued on February 23, 2001. (AR 3) Under the terms of the order, Ruiz was required to leave the United States on or before June 25 of that year. (AR 2) The order also provided that if Ruiz failed to depart on or before that date, the order would automatically convert to an order of removal. (*Id.*)

The parties do not dispute that Ruiz left the United States following the issuance of the IJ's 2001 order, but they disagree as to whether Ruiz left on time. Ruiz contends that his 2001 departure was timely. (Pet. Br. 4) In response, the government produced its Form G-146 (Verification of Departure). (AR 19-20) This form, which was completed by an official at the United States Embassy in Mexico City, Mexico, reflects that Ruiz left the United States on July 8, 2001, which was after the June 25 deadline set forth in the IJ's 2001 order. (AR 19)

Ruiz illegally reentered the United States on at least three occasions thereafter. The administrative record shows that Ruiz was allowed to return voluntarily to Mexico on two consecutive days in May 2004, when he was apprehended near the border. (AR 18) Furthermore, Ruiz told an immigration enforcement agent that he reentered the United States illegally in early 2005 at the Mexico/New Mexico border. (AR 17) After Ruiz's June 2012 arrest for operating a motor vehicle under the influence of alcohol, he was released into the custody of the United States Immigration and Customs Enforcement (ICE) agency, which is the enforcement arm of DHS. (*Id.*) DHS notified Ruiz on July 2, 2012 that it intended to reinstate the IJ's February 23, 2001 order of

removal against him. (AR 1) After Ruiz refused to sign DHS's Notice of Intent form, the 2001

order was reinstated on July 2, 2012, the same day that Ruiz received DHS's notification. The

reinstatement made Ruiz subject to immediate removal, and he was in fact removed to Mexico the

following day. (*Id.*) This timely appeal followed.

## II. ANALYSIS

### A. Standard of review

We review de novo constitutional and statutory claims in cases involving reinstatement

orders. *Villegas de la Paz v. Holder*, 640 F.3d 650, 655 (6th Cir. 2010). Administrative findings

of fact are deemed conclusive unless "any reasonable adjudicator would be compelled to conclude

to the contrary." *Id.* (internal quotations marks omitted) (quoting 8 U.S.C. § 1252(b)(4)(B)).

### B. Jurisdiction

We have jurisdiction under 8 U.S.C. § 1252(a)(1), which authorizes circuit courts to review

reinstatement orders. 8 U.S.C. § 1252(a)(1); *Warner v. Ashcroft*, 381 F.3d 534, 536 (6th Cir. 2004)

(per curiam). Despite this statutory grant of jurisdiction, the government argues that we lack

jurisdiction here because Ruiz failed to exhaust his administrative remedies. (Resp. Br. 8-10)

Specifically, the government contends that Ruiz should have checked the box labeled "I [do or do

not] wish to make a statement contesting this determination" on the Notice of Intent form. (AR 1)

Ruiz does not dispute that he refused to sign the form, but claims that his refusal was due to not

wanting to sign the form without the advice of his attorney. The government contends that Ruiz's

failure to make a statement regarding the reinstatement order at the administrative level prevents him

from contesting the order now.

The main flaw in the government's administrative-exhaustion argument is that the opportunity "to make a statement contesting [ICE's] determination" has been found not to amount to an administrative remedy. *See Castro-Cortez v. INS*, 239 F.3d 1037, 1045 (9th Cir. 2001) (explaining that the "proffered opportunity to make a statement does not . . . qualify as an administrative remedy"), *abrogated on other grounds by Fernandez-Vargas v. Gonzales*, 548 U.S. 30 (2006).

If an alien chooses to make a statement contesting the reinstatement determination, then an ICE officer need only "consider whether the alien's statement warrants reconsideration of the determination [to reinstate the prior order]." 8 C.F.R. § 241.8(b). The statement is tantamount to an oral request for discretionary relief from reinstatement. *See Castro-Cortez*, 239 F.3d at 1045 (discussing such statements by aliens). An alien is not entitled to a hearing before an immigration judge during the reinstatement process, irrespective of whether the alien decides to make a statement contesting the administrative determination. *See* 8 C.F.R. § 241.8(a) ("The alien has no right to a hearing before an immigration judge in such circumstances."). Moreover, the alien's decision as to whether to make a statement does not affect his right to appeal the decision to the appropriate circuit court. *See Castro-Cortez*, 239 F.3d at 1045 (explaining that the opportunity to make a statement is not "a remedy that must be exhausted before an appeal could be taken to this court"). Accordingly, we reject the government's argument regarding administrative exhaustion because there was no remedy for Ruiz to exhaust at the agency level.

### C.    Reinstatement of the IJ's 2001 order did not violate due process

We now turn to the merits of Ruiz's claims. Ruiz argues that DHS violated his due process rights in two ways. He first contends that DHS failed to offer him a meaningful opportunity to contest the basis for reinstatement of the IJ's 2001 order. Second, he claims that DHS improperly restricted his access to counsel during and after reinstatement.

With regard to Ruiz's first claim, he contends that DHS offered him too little time to contest the reinstatement. Ruiz alleges that only twenty minutes elapsed between the time he was served with the Notice of Intent form and the reinstatement of the IJ's 2001 order of removal. (Pet. Br. 7) He asserts that if DHS had given him more time to object to reinstatement, he would have offered evidence demonstrating that he complied with the command in the earlier order that he leave the United States on or before June 25, 2001. To bolster this claim, Ruiz attached a large amount of extra-record evidence to his petition for review, although we note that he never filed a motion to supplement the administrative record. This evidence—which includes a bus ticket from Juarez dated June 18, 2001 and a Mexican drug prescription dated June 21, 2001—purportedly shows that Ruiz voluntarily departed the United States before the deadline in the IJ's 2001 order. In effect, Ruiz attacks both the factual predicate for the reinstatement order and the procedures accompanying reinstatement.

Ruiz's second claim is that DHS unlawfully denied him the right to consult with his privately retained counsel. He further alleges that DHS deliberately misled his attorney regarding the agency's intentions and failed to timely furnish his counsel with a copy of the reinstatement order. Ruiz contends that this alleged interference by DHS prejudiced him.

To prevail on a due process claim arising from the reinstatement process, an alien must show that the challenged proceedings did not comport with the "traditional standards of fairness encompassed in due process of law" and that the alien suffered prejudice as a result. *Warner v. Ashcroft*, 381 F.3d 534, 537 (6th Cir. 2004) (per curiam) (internal quotation marks omitted). *See also id.* at 539 (explaining that "proof of prejudice is necessary to establish a due process violation").

The reinstatement process is purposely streamlined. *See Bejjani v. INS*, 271 F.3d 670, 675 (6th Cir. 2001) (discussing the abbreviated nature of the process), *abrogated on other grounds by Fernandez-Vargas*, 548 U.S. 30 (2006). This is because an alien who is subject to a reinstatement order has already gone through a removal proceeding. *See Tilley v. Chertoff*, 144 F. App'x 536, 540 (6th Cir. 2005) (explaining that a "reinstatement order is just that: it reinstates a prior order"). Under the regulations, an ICE officer need determine only whether (1) the alien is subject to a prior order of removal, (2) the alien is the same person as the one named in the prior order, and (3) the alien unlawfully reentered the United States. 8 C.F.R. § 241.8(a)(1)-(3). In making this determination, the officer must "consider all relevant evidence, including statements made by the alien and any evidence in the alien's possession," and "shall attempt to verify an alien's claim . . . that he or she was lawfully admitted." *Id.* § 241.8(a)(3). If the officer determines that the alien is subject to removal, then the officer must provide the alien with written notice of the determination, along with an opportunity for the alien to contest the determination either orally or in writing. *Id.* § 241.8(b). Finally, the reinstatement order may be appealed to the appropriate circuit court of appeals. *See* 8 U.S.C. § 1252(a)(1).

This court has already held in an unpublished decision that the reinstatement procedure, notwithstanding its streamlined nature, generally affords sufficient due process protections to aliens. *See Tilley*, 144 F. App'x at 540 (holding that the "reinstatement procedure offers adequate due process"). *See also Ponta-Garcia v. Att'y Gen. of U.S.*, 557 F.3d 158, 163 n.4 (3d Cir. 2009) (holding that the reinstatement procedure passes constitutional muster and noting that other circuit courts have reached the same conclusion).

An alien who appeals a reinstatement order often faces an uphill climb. This is in part because the circuit courts are statutorily "prohibited from considering facts not in the administrative record." *Bejjani*, 271 F.3d at 676 (citing 8 U.S.C. § 1252(b)(4)(A)). If the administrative record is thin (as it is in this case), then the alien is effectively limited to his own say-so, the arguments of counsel, and any supplemental evidence that he might proffer when attacking the evidentiary basis of a reinstatement order. We are not the first court to note this difficulty for aliens who are appealing reinstatement. *See, e.g.*, *Zamora-Vallejo v. Holder*, 378 F. App'x 386, 390 n.2 (5th Cir. 2010) (explaining that because aliens do not have the right during reinstatement proceedings to "place evidence into the administrative record, a court may have almost no record to review if the alien contests one of the predicates for removal").

Nevertheless, the question of how an alien might successfully challenge the facts underlying reinstatement can be reserved for another day because Ruiz is unable to show that he suffered any prejudice as a result of the alleged due process violations. *See Warner*, 381 F.3d at 539. Ruiz does not dispute that he reentered the United States illegally after June 2001, so whether he departed for Mexico before or after the June 25, 2001 deadline in the IJ's 2001 order is immaterial. And his

argument that he was prejudiced because the summary procedure prevented him from applying for cancellation of removal is unavailing because cancellation of removal is a form of discretionary relief. *See Patel v. Ashcroft*, 401 F.3d 400, 404 (6th Cir. 2005) (explaining that cancellation of removal is "a remedy that is discretionary at [sic] all events"). Aliens do not have a constitutionally protected interest in obtaining discretionary relief, nor do they have a protected interest in being considered for it. *See, e.g.*, *United States v. Torres*, 383 F.3d 92, 104 (3d Cir. 2004) (collecting cases from various circuits holding that aliens have no due process interest in being considered for discretionary relief). *See also Shvartsman v. Apfel*, 138 F.3d 1196, 1199 (7th Cir. 1998) (explaining that "access to procedures" is not a protectable property interest). Moreover, even if Ruiz had been allowed full access to counsel during the reinstatement process and even if DHS had adequately advised Ruiz's counsel of its intent to remove Ruiz, the outcome would have been the same because Ruiz was indisputably an illegally reentering alien. Ruiz's due process claims thus fail because he has no possibility of showing prejudice.

## III. CONCLUSION

For all of the reasons set forth above, we **DENY** Ruiz's petition for review.