

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

10-9-2007

# Debeato v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-3235

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Debeato v. Atty Gen USA" (2007). *2007 Decisions.* Paper 313.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/313

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 05-3235
_____

LUZ MARTINA FELIZ DEBEATO

Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES

Respondent
_____

Initially docketed as an Appeal from the
United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 04-cv-0603)
District Judge:  Honorable Cynthia M. Rufe
Converted to a Petition for Review from the
Board of Immigration Appeals
Pursuant to the REAL ID Act of 2005
(Board No. A 41 943 418)
Immigration Judge: Honorable Bruce Michael Barrett
_____

Argued May 23, 2007
Before: CHAGARES, HARDIMAN and TASHIMA ,
*Circuit Judges*.

(Filed: October 9, 2007  )


Jonathan Feinberg, Esq. (Argued)
Kairys, Rudovsky, Messing & Feinberg
718 Arch Street
Suite 501 South
Philadelphia, PA 19106

    *Attorneys for Petitioner*

Richard M. Bernstein, Esq.  (Argued)
Dennis M. Abraham, Esq.
Office of United States Attorney
615 Chestnut Street
Philadelphia, PA 19106

    *Attorneys for Respondent*

_____

OPINION OF THE COURT

* The Honorable A. Wallace Tashima, Senior Circuit Judge for the United States Court of Appeals for the Ninth Circuit, sitting by designation.

2

_____

HARDIMAN, *Circuit Judge*.

This immigration case began as a petition for writ of habeas corpus, but is before us now as a petition for review. For the reasons that follow, we will deny the petition.

## I.

Petitioner Luz Martina Feliz-Debeato (Debeato), a Dominican national, first came to the United States in 1988. Two years later, she pleaded guilty to drug possession, distribution, and conspiracy-related offenses in the Court of Common Pleas of Lehigh County, Pennsylvania. After serving three years of a six-year sentence, she was paroled.

Following Debeato's release from prison, the INS commenced deportation proceedings, alleging that she was deportable as an "aggravated felon" within the meaning of the Immigration and Nationality Act (INA). The immigration judge (IJ) found her subject to deportation as charged — and ineligible for discretionary relief under Section 212(c) of the INA — on the ground that she had not lived in the United States continuously for seven years. Accordingly, Debeato was ordered deported to the Dominican Republic.

The Board of Immigration Appeals (BIA) affirmed the decision of the IJ, finding both that Debeato did not have seven years of unrelinquished domicile in the United States and that she was ineligible for Section 212(c) relief because she was an

"aggravated felon" for purposes of Section 440(d) of the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA).

Although Debeato left the United States in 1998, she was apprehended at her husband's home in Reading, Pennsylvania in 2000 after having returned surreptitiously. Debeato was charged with one count of illegal reentry in violation of 8 U.S.C. § 1326(a) & (b)(2) and was sentenced to forty-six months in prison after entering a guilty plea to that charge.

On August 1, 2003, Debeato filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 requesting cancellation of her removal order and adjustment of her status. Debeato claimed that her prior deportation was invalid because the immigration court erred when it deemed her ineligible for a Section 212(c) waiver of deportation. Six months later — while Debeato remained incarcerated — the Department of Justice issued a Form I-871, Notice of Intent/Decision to Reinstate Prior Order under INA § 241(a)(5), 8 U.S.C. § 1231(a)(5) (Form I-871). The Form I-871 summarily reinstated the October 1993 order of deportation.

II.

The REAL ID Act, Pub. L. 109-13, Div. B, Title I § 106(c), requires us to treat Debeato's habeas petition as a petition for review under § 242 of the INA. *See Bonhometre v. Gonzales,* 414 F.3d 442, 446 (3d Cir. 2005); *see also Kamara v. Attorney Gen.*, 420 F.3d 202, 210 (3d Cir. 2005). But first we must ascertain whether we have jurisdiction over the petition for review despite the parties' agreement that jurisdiction lies in this

Court. *See Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 95, 118 S. Ct. 1003, 140 L. Ed. 2d 210 (1998); *see also Soltane v. U.S. Dept. of Justice*, 381 F.3d 143, 146 (3d Cir. 2004).

Before 2005, we lacked jurisdiction over any petition brought by an alien who had been convicted of one of the offenses listed in 8 U.S.C. § 1252(a)(2)(C). Debeato concedes that she is an alien, and admits that she was convicted of one of the enumerated offenses set forth in § 1252(a)(2)(C). Thus, under the precursor to the REAL ID Act, we would have lacked jurisdiction over Debeato's petition. *See Papageorgiou v. Gonzales*, 413 F.3d 356, 357 (3d Cir. 2005). However, "[t]he jurisdictional framework for aliens convicted of certain enumerated offenses was restructured by Congress and the President on May 11, 2005," when the REAL ID Act was enacted into law. *Id.* at 357-58.

The REAL ID Act divested all courts of jurisdiction over denials of discretionary relief and orders against criminal aliens, including those challenged through a habeas corpus petition. *See* 8 U.S.C. §§ 1252(a)(2)(B) and (C). However, in a new subparagraph captioned "Judicial Review of Certain Legal Claims," Congress restored a portion of the jurisdiction it took away in subparagraphs (B) and (C). That subparagraph reads, in pertinent part:

> Nothing in subparagraph (B) or (C), or in any other provision of this Act (other than this section) which limits or eliminates judicial review, shall be construed as precluding review of constitutional claims or questions of law raised

5

upon a petition for review filed with an appropriate court of appeals in accordance with this section.

8 U.S.C. § 1252(a)(2)(D). In *Papageorgiou*, we quoted that same subparagraph, and interpreted it as follows:

> With this amendment, Congress evidenced its intent to restore judicial review of constitutional claims and questions of law presented in petitions for review of final removal orders. This now permits all aliens, including criminal aliens, to obtain review of constitutional claims and questions of law upon the filing of a petition for review with an appropriate court of appeals. We reach this conclusion because Congress has provided that nothing in 8 U.S.C. § 1252(a)(2)(B), (C), or any other provision of the INA shall preclude judicial review of such orders, unless such review is barred by some other provision of 8 U.S.C. § 1252. For this reason, we believe that, with passage of the Act, Congress has repealed all jurisdictional bars to our direct review of constitutional claims and questions of law in final removal orders other than those remaining in 8 U.S.C. § 1252 ( *e.g.,* in provisions other than (a)(2)(B) or (C)) following the amendment of that section by the Act.

413 F.3d at 358. As Debeato concedes, *Papageorgiou* did not decide whether the grant of jurisdiction in § 1252(a)(2)(D)

6

extended to orders *reinstated* pursuant to 8 U.S.C. § 1231(a)(5). But we see no reason why *Papageorgiou* should not apply with equal force to reinstated orders.

On this point, we find persuasive the reasoning of *Ramirez-Molina v. Ziglar*, 436 F.3d 508 (5th Cir. 2006), in which the Court of Appeals for the Fifth Circuit found jurisdiction over a challenge to a reinstated order. In so doing, the Fifth Circuit explained:

> The REAL ID Act has in fact removed one barrier to our jurisdiction that might otherwise have existed. Title 8 U.S.C. § 1231(a)(5) specifies that when the Attorney General reinstates an order of removal after an alien re-enters the United States in violation of that order, the order "is not subject to being reopened or reviewed." . . . In addition to carving out exceptions to the jurisdiction-stripping provisions of § 1252 for constitutional and legal claims, § 1252(a)(2)(D) states that "[no] other provision of this chapter . . . which limits or eliminates judicial review, shall be construed as precluding constitutional claims or claims of law." Section 1231 is in the same chapter as § 1252. Because § 1231(a)(5) limits judicial review, § 1252(a)(2)(D) prevents its operation in cases, such as this one, in which the validity of an underlying order is questioned on constitutional or legal grounds.

*Id.* at 513-14. We find the foregoing reasoning consistent with

our statement that § 1252(a)(2)(D) "repeal[ed] all jurisdictional bars to our direct review of constitutional claims and questions of law in final removal orders." *Papageorgiou,* 413 F.3d at 358. Our confidence in this conclusion is reinforced by our observation in another post-REAL ID Act case, in which we noted that "an order reinstating a prior removal order is the functional equivalent of a final order of removal." *Dinnall v. Gonzales,* 421 F.3d 247, 251 n.6 (3d Cir. 2005) (citation and internal quotation marks omitted).

After *Papageorgiou* and *Dinnall*, there is no principled reason for reading § 1252(a)(2)(D) as permitting jurisdiction to review a final removal order, yet denying jurisdiction to review a reinstatement of that very same order.[2] Accordingly, we conclude that the REAL ID Act, specifically § 1252(a)(2)(D), permits us to exercise jurisdiction over legal and constitutional challenges to final orders of removal, including those final orders that the Attorney General has reinstated pursuant to § 1231(a)(5).

---

[2]Although the Sixth Circuit found jurisdiction lacking in these circumstances in *Tilley v. Chertoff*, 144 F. App'x 536 (6th Cir. 2005), and although *Tilley* was decided after the REAL ID Act became law, it — unlike *Ramirez-Molina* — reached its result by relying on pre-REAL ID caselaw and made no effort to reconcile that result with the language of § 1252(a)(2)(D). For that reason, and because we cannot square *Tilley* with our reading of the REAL ID Act that we advanced in *Papageorgiou*, we decline to follow *Tilley* on this point of law.

## III.

Having established jurisdiction, we must ascertain the appropriate standard of review. "Although [Debeato's] habeas corpus petition has now been converted to a petition for review, our standard of review remains the same." *Silva-Rengifo v. Attorney Gen.*, 473 F.3d 58, 63 (3d Cir. 2007); *see also Kamara,* 420 F.3d at 210-11. Thus, we review Debeato's constitutional and legal questions *de novo, see id.*, but defer to the BIA's reasonable interpretations of the statutes it is charged with administering. *See INS v. Aguirre-Aguirre,* 526 U.S. 415, 424, 119 S. Ct. 1439, 143 L. Ed. 2d 590 (1999); *see also Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.,* 467 U.S. 837, 842-43, 104 S. Ct. 2778, 81 L. Ed. 2d 694 (1984).

Although the foregoing standard of review plainly applies on direct review of an original removal order, we recognize that Debeato has brought a collateral attack on a removal order for which the Fifth Circuit required a showing of "a gross miscarriage of justice sufficient to allow [consideration of] the merits of a petitioner's collateral attack on a removal order." *Ramirez-Molina*, 436 F.3d at 514. Debeato characterizes this as a "requirement unique to the Fifth Circuit," and we agree with her to a point. Insofar as *Ramirez-Molina* characterized the "gross miscarriage of justice" requirement as jurisdictional, *see* 436 F.3d at 514-15, we decline to follow it. But we have required petitioners bringing collateral challenges to orders of deportation or exclusion to show a "gross miscarriage of justice" — not as a jurisdictional showing, but as a prerequisite to relief. *See McLeod v. Peterson*, 283 F.2d 180, 184 (3d Cir. 1960) (as amended). Accordingly, we will apply the "gross miscarriage"

standard not as did the Fifth Circuit in *Ramirez-Molina,* but rather as a facet of the standard of review of collateral challenges to removal orders.

**IV.**

Having established our jurisdiction, and having ascertained the appropriate standard of review, we reach the merits of the petition. Debeato challenges the BIA's April 1, 1997 order, which held, in pertinent part:

> [Debeato] is seeking relief from deportation under section 212(c) of the Immigration and Nationality Act, 8 U.S.C. § 1182(c). At the time of the hearing, the Immigration Judge properly denied that relief because [Debeato] did not then have the 7 years lawful unrelinquished domicile required for the waiver. Moreover, [she] is now statutorily ineligible for such relief as an "alien who is deportable by reason of having committed any criminal offense covered in section 241(a)(2)(A)(iii), (B), (C), or (D), or any offense covered by section 241(a)(2)(A)(ii) for which both predicate offenses are covered by section 241(a)(2)(A)(I)." *See* Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 ("AEDPA"), § 440(d); *Matter of Soriano*, Interim Decision 3289 (A.G., Feb. 21, 1997).

Debeato argues that the BIA incorrectly determined that she had

10

not met the domicile requirement, and that it erred in applying AEDPA to her case. She acknowledges that these issues are not of "constitutional dimension." Instead, she characterizes her claim as presenting a "question of law" reviewable under § 1252(a)(2)(D).

The government concedes the foregoing points, and rightly so. We have held that an alien's lawful permanent resident status ends with the entry of a *final* administrative order of deportation. *See Katsis v. INS*, 997 F.2d 1067, 1071 (3d Cir. 1993); *see also Tipu v. INS*, 20 F.3d 580, 583 (3d Cir. 1994). As to the second point, we have held that § 440(d) of AEDPA did not apply retroactively to cases pending in 1996. *See Sandoval v. Reno*, 166 F.3d 225, 242 (3d Cir. 1999) (abrogating *Matter of Soriano*). Accordingly, both of the reasons the BIA offered for affirming the IJ's 1993 order of deportation were, with the benefit of hindsight, incorrect.

Given our conclusion that the BIA's 1997 order was erroneous as a matter of law in both respects, the question then becomes whether these errors resulted in a gross miscarriage of justice. Like the Fifth Circuit, we have yet to describe the contours of the "gross miscarriage" standard. *See Ramirez-Molina*, 436 F.3d at 514. Where, as here, a petitioner's collateral attack on a removal order raises only a "question of law" within the meaning of § 1252(a)(2)(D), the Seventh Circuit has observed that a gross miscarriage of justice has been found only when "the individual *should not have been deported based on the law as it existed at the time of the original deportation.*" *See Robledo-Gonzales v. Ashcroft*, 342 F.3d 667, 682 n.13 (7th Cir. 2003) (emphasis added) (declining to find a gross

11

miscarriage of justice where a petitioner "seeks to have applied to him an interpretation of the law made subsequent to the time of the original deportation decision, namely [*INS v.*] *St. Cyr*[, 533 U.S. 289, 121 S. Ct. 2271, 150 L. Ed. 2d 347 (2001)].") (citing *Matter of Farinas,* 12 I. & N. Dec. 467 (BIA 1967), and *Matter of Malone,* 11 I & N Dec. 730, 731-32 (BIA 1966) (finding a "gross miscarriage of justice" when "on the basis of judicial and administrative decisions existing at the time of the original proceeding, no order of deportation should have been entered")). We find this approach persuasive and consistent with our more general formulation of the standard. *See McLeod*, 283 F.2d at 184 (finding a gross miscarriage of justice where the "error was so obvious and so clear that counsel should have been quick to appeal").

Under this approach, it is clear that the BIA's 1997 decision affirming the IJ's order of deportation was not grossly unjust. The first ground the BIA cited in support of its decision — namely, that Debeato was deportable because she had not met the seven-year domiciliary requirement at the time of her 1993 hearing before the IJ — was demonstrably wrong, even in 1997. *See Katsis*, 997 F.2d at 1071; *see also Tipu*, 20 F.3d at 583. But the BIA's final decision was not based on that ground alone. As noted above, it also was based on the conclusion that AEDPA § 440(d) applied retroactively and barred certain felons, including Debeato, from § 212(c) relief. In *Sandoval*, we held that this retroactive application of AEDPA § 440(d) was improper and the Supreme Court reached a similar decision in *St. Cyr*. But *Sandoval* was not decided until 1999, and *St. Cyr* was decided in 2001. Thus, under the Attorney General's interim decision in *Matter of Soriano* — "the law as it existed at

12

the time of the original deportation," *Robledo-Gonzales*, 342 F.3d at 682 n.13 — the BIA's determination that Debeato was deportable pursuant to AEDPA § 440(d) was not a gross miscarriage of justice.[3]

For all of the aforementioned reasons, and after careful consideration of the record and the parties' contentions, we will deny Debeato's petition for review.

---

[3]On this point, we decline to follow the Sixth Circuit's unpublished opinion in *Tilley v. Gonzales*, 228 F. App'x 585 (6th Cir. 2007). In *Tilley*, the court vacated a 1997 order of deportation — which had depended upon a retroactive application of the AEDPA — on the ground that it was "contrary to" *Pak v. Reno*, 196 F.3d 666, 676 (6th Cir. 1999), which in turn established that AEDPA did not apply retroactively in these circumstances. *See Tilley*, 228 F. App'x at 587 (citing *Pak*). This approach is problematic. Although the Sixth Circuit has applied the "gross miscarriage" standard, *see Palma v. INS*, 318 F.2d 645, 647 (6th Cir. 1963), it has not done so since well before the enactment of the REAL ID Act and the Sixth Circuit made no mention of it in *Tilley*. In any event, *Tilley* involved a direct, not a collateral, challenge to a removal order.