**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-4781
_____

GEORGE K. BELL,
                                    Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA,
                                    Respondent
_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A041 454 503)
Immigration Judge:  Honorable Walter Durling
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
August 3, 2015

Before: FISHER, KRAUSE and VAN ANTWERPEN, Circuit Judges

(Opinion filed: August 11, 2015)
_____

OPINION*
_____

PER CURIAM

---

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

George Bell, proceeding pro se, petitions for review of a decision of the Board of Immigration Appeals ("BIA") dismissing his appeal of an Immigration Judge's denial of his application for relief from removal. For the reasons that follow, we will deny the petition for review.

Bell, a native and citizen of Jamaica, was admitted to the United States as a lawful permanent resident in 1988. In 2002, a notice to appear was issued alleging that Bell had two convictions in New York state court for petty larceny and convictions for attempted sale of drugs and drug possession. The notice charged that Bell was subject to removal from the United States because he was convicted of two crimes involving moral turpitude and an aggravated felony. Bell did not appear for his hearing. An Immigration Judge found him removable as charged and ordered his removal in absentia. Bell was removed from the United States in 2007, but he re-entered in 2009. Bell pleaded guilty in federal court to criminal charges related to the illegal reentry. The Department of Homeland Security reinstated his removal order.

Bell's case was referred to an Immigration Judge ("IJ") because Bell asserted that he feared he would be harmed if removed to Jamaica. The IJ questioned Bell, who proceeded pro se at his hearing, about the written statement he had submitted in support of his application for relief from removal. Bell confirmed that, before he came to the United States in 1988, he lived in a neighborhood where two gangs operated, the Spanglers and the Zebra Force. Bell stated that he did not belong to either gang but people assumed that he did based on where he lived. When he was about twelve years

2

old, the police took him into custody for two weeks and accused him of belonging to the Spangler gang and breaking into a store. While detained, the police hit him on the head with a gun. When Bell was a teenager, Spangler gang members shot at him on one occasion and assaulted him with a machete on another. Bell came to the United States when he was seventeen years old and lived here for close to twenty years.

Bell testified that, after he was removed in 2007, he lived with a cousin named Jamie Fisher in a different area of Jamaica than he had lived before. Bell thought he would be safe from the people who knew him in his former neighborhood. In 2008, the police approached him and his cousin on the street with their guns drawn while investigating a shooting. In his written statement, Bell stated that the police searched them for weapons and said that they had heard that he was a gang member. An officer choked Bell and accused him of knowing about the shooting. Bell also stated that the police asked him where he was from and found his identification from New York. When Bell told them he was deported, the police wanted him to go with them, but Bell refused. The police beat him with their guns. The police stopped when people began to gather. The police threatened to kill him and Fisher.

Bell moved to another area in Jamaica that he believed was a safer place to live. He lived there for over a year. Bell stated that he primarily stayed inside. He then illegally entered the United States. In 2010, the police shot and killed Fisher. According to one report, two police officers had been killed in the area and police were then engaged in a shootout with Fisher and others. Bell also stated that gang members had

3

killed his cousin in 1999, his half-brother in 2001, and another cousin in 2003, and that the police had killed a cousin they believed to be a gang member in 2006. Bell testified that he feared that, if he returned to Jamaica, the police might harm him because he is a criminal deportee, or that Spangler gang members might harm him in the same way they hurt his family members.

The IJ determined that Bell was only eligible for relief from removal under the Convention Against Torture ("CAT") due to his drug trafficking conviction. The IJ found Bell credible but concluded that his claim that the Spangler gang or the police would target him was speculative. The BIA dismissed Bell's appeal of the denial of CAT relief. The BIA agreed with the IJ that Bell's fear was speculative and rejected Bell's claim that the IJ did not act as a neutral fact-finder. The BIA, however, remanded the matter for further fact-finding on Bell's eligibility for withholding of removal. The BIA noted Bell's pro se status and found it unclear from the record whether Bell's criminal offense constituted a "particularly serious crime" precluding this form of relief. The BIA stated that the IJ could also alternatively decide the merits of Bell's application regardless of his eligibility.

On remand, the IJ held a hearing and afforded the Government time to submit evidence of Bell's prior convictions. The Government submitted evidence and, before the next scheduled hearing, the IJ issued a decision denying Bell's application for withholding of removal on the merits. The IJ stated that it would not be difficult to find a "particularly serious crime" in Bell's past that would bar his eligibility, but ruled that he

4

would consider his withholding of removal claim because he had not questioned Bell about his criminal record. The IJ decided that Bell did not meet his burden of proof for withholding of removal by showing a clear probability of future persecution on account of a statutorily-protected ground.

The IJ explained that the single encounter with police in 2008 did not rise to the level of persecution and was a random encounter during a police investigation of a shooting. The IJ stated that Bell did not show that he was targeted on account of a protected ground and rejected his suggestion that he was targeted as a criminal deportee. The IJ also found that Bell had not shown that the deaths of his relatives while he lived in the United States had any connection to him or that Fisher's death was connected to the earlier police encounter. The IJ recognized evidence of police brutality and killings in Jamaica, but found that this evidence did not suggest that Bell was wanted by police or show a clear probability of future persecution.

The BIA affirmed the IJ's decision that Bell did not show that he would be persecuted on account of a statutorily-protected ground. The BIA stated that the evidence did not establish that Bell's or Bell's family members' experiences with the police and gangs had the required nexus to a protected ground. The BIA stated that Bell's claim that his past experiences were based on his criminal deportee status or his connection to his family, and his claim that he faces a clear probability of persecution on account of a protected ground, were speculative. The BIA also rejected Bell's claim that he was denied due process. This petition for review followed.

5

We have jurisdiction pursuant to 8 U.S.C. § 1252(a)(1). Our jurisdiction is limited to constitutional claims and questions of law because Bell was found removable for having committed an aggravated felony. 8 U.S.C. § 1252(a)(2)(C),(D). See also Debeato v. Att'y Gen., 505 F.3d 231, 235 (3d Cir. 2007) (holding Court has jurisdiction over legal and constitutional challenges by criminal aliens to final removal orders, including those that the Attorney General has reinstated). We review constitutional and legal questions de novo. Debeato, 505 F.3d at 235.

Bell contends that the IJ violated his due process rights by issuing a decision on his withholding of removal claim before the hearing that had been scheduled to determine his eligibility for this form of relief. We agree with the BIA that the record does not reflect a due process violation. The BIA stated in its remand order that the IJ could make an alternative determination on the merits of Bell's application regardless of his eligibility. By electing not to decide whether he had been convicted of a "particularly serious crime," the IJ treated Bell as eligible for withholding of removal and reached the merits of his claim.[1]

Bell asserts that he did not have an opportunity to present evidence, but he had a full hearing on his application for relief from removal before the remand and he has not

---

[1] The Government argues that Bell did not exhaust a claim that the IJ acted outside the scope of the BIA's remand order, but the administrative record reflects that Bell raised this argument in his brief to the BIA. See A.R. at 9-11.

identified any evidence that he was precluded from presenting. To the extent Bell

contends that the Government delayed sending him evidence of his convictions, as

recognized by the BIA, the IJ did not rely on this evidence because he decided his claim

on the merits. See also Leslie v. Att'y Gen., 611 F.3d 171, 175 (3d Cir. 2010) (an alleged

due process violation ordinarily requires a showing of prejudice).[2] Finally, we also agree

with the BIA that the record does not support Bell's allegations that the IJ was biased.

Bell also argues that his credible testimony and documentary evidence was

sufficient to meet his burden of proof for withholding of removal. To the extent Bell

challenges the BIA's application of the law to the undisputed facts, we have jurisdiction

to consider his argument. Toussaint v. Att'y Gen., 455 F.3d 409, 412 n.3 (3d Cir. 2006).

To be afforded withholding of removal, Bell was required to show that it is more likely

than not that his life or freedom would be threatened on account of his race, religion,

nationality, membership in a particular social group, or political opinion. Id. at 413.

As noted above, the BIA affirmed the IJ's denial of withholding of removal on the

ground that Bell did not establish the requisite nexus to a statutorily-protected ground.

The administrative record supports this conclusion. Bell's detention by police as a child

appears to have been motivated by a theft in the area and his encounter with police after

his removal was during an investigation of a shooting. We recognize that Bell had two

---

[2]     It appears that the IJ merely misstated in his decision the date that the Government
served its evidence. The IJ stated that Bell was served on July 14, 2014, but the record
reflects that service was made on July 18, 2014.

encounters with Spangler gang members when he was a teenager, but the first was motivated by the death of the gang member's brother, and the second, which occurred more than a year later, was unrelated and appears to have been an isolated incident.

Bell contends that his family members' deaths support his claim of future persecution on account of a protected ground. The circumstances of the killings of Bell's half-brother and four of his cousins from 1999 to 2010, however, are for the most part not known. The country reports reflect that gangs and the police engage in violence in Jamaica. As recognized by the BIA, conditions of lawlessness and ordinary criminal activity do not constitute persecution on account of a protected ground. Abdille v. Ashcroft, 242 F.3d 477, 494-95 (3d Cir. 2001).[3]

Accordingly, we will deny the petition for review.

---

[3] Because Bell has not shown the requisite nexus, we have not considered whether he is a member of a particular social group. Bell asserts in his brief that he will be targeted because his family members are police informants. Bell stated in the administrative proceedings that several family members were labeled police informants, but we agree with the Government that he did not claim that he would be targeted on this basis. We do not consider this claim. 8 U.S.C. § 1252(d) (requiring exhaustion of administrative remedies). We disagree, however, with the Government that Bell has waived his claim that he fears persecution on account of suspected gang membership by failing to raise it in his brief. See Pet'r's Brief at 3-5, 15. We have thus considered this claim.