**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| ALEJANDRO ISRAEL VILLA-ANGUIANO, | No. 08-74585 |
| *Petitioner*, | |
| | Agency No. A090-068-616 |
| v. | |
| ERIC H. HOLDER, JR., Attorney General, | OPINION |
| *Respondent*. | |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
April 9, 2013—Pasadena, California

Filed August 14, 2013

Before: Marsha S. Berzon, Richard C. Tallman,
and Milan D. Smith, Jr., Circuit Judges.

Opinion by Judge Berzon;
Dissent by Judge Tallman

**SUMMARY**[*]

**Immigration**

The panel granted Alejandro Israel Villa-Anguiano's petition for review from the government's reinstatement of a prior removal order, vacated the reinstated order, and remanded the case to Immigration and Customs Enforcement.

The panel held that, because the district court hearing the criminal prosecution against Villa for illegal reentry invalidated on constitutional grounds the prior removal order, the government could not simply rely on a pre-prosecution determination to reinstate the prior order. The panel held that the agency must provide Villa with an opportunity to address the expedited reinstatement determination, and that the agency must independently reassess whether to rely on the prior order or rather to instigate full removal proceedings.

Dissenting, Judge Tallman would deny relief. He would find that the laws enacted by Congress, and the Department of Homeland Security's permissible construction of those laws, allowed the immigration officer to reinstate Villa's prior order of removal, regardless of the district court's conclusion. Judge Tallman also wrote that the majority opinion announced a novel holding that an alien who unlawfully re-enters the country has a due process right to influence the exercise of the Department of Homeland Security's prosecutorial discretion.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Karla L. Kraus (argued), Kraus Law Corporation, San Diego, California, for Petitioner.

Carol Federighi (argued), Senior Litigation Counsel; Tony West, Assistant Attorney General; William C. Peachey, Assistant Director, United States Department of Justice, Civil Division, Washington, D.C., for Respondent.

**OPINION**

BERZON, Circuit Judge:

Alejandro Israel Villa-Anguiano ("Villa") petitions for review of the government's reinstatement of a removal order issued in 1997. Villa contends that the Immigration and Customs Enforcement ("ICE") agency of the Department of Homeland Security ("DHS") may not deport him on the basis of his prior removal order, because a federal district court found that due process violations in his 1997 immigration hearing rendered the removal order invalid as a predicate for criminal prosecution under 8 U.S.C. § 1326.

We have jurisdiction under 8 U.S.C. § 1252(a)(1) to review a reinstatement order, *see Castro-Cortez v. INS*, 239 F.3d 1037, 1044 (9th Cir. 2001), *abrogated on other grounds by Fernandez-Vargas v. Gonzales*, 548 U.S. 30 (2006); *accord Padilla v. Ashcroft*, 334 F.3d 921, 924 (9th Cir. 2003), and retain jurisdiction under § 1252(a)(2)(D) to consider "constitutional claims or questions of law raised upon a petition for review," *see Garcia de Rincon v. DHS*, 539 F.3d 1133, 1137–38 (9th Cir. 2008). For the reasons

stated below, we grant Villa's petition, vacate the reinstatement order, and remand to ICE for further proceedings.

I.

This case comes before us in an unusual posture. Villa, who entered the United States from Mexico at the age of one, became a lawful permanent resident in 1989. Following a conviction for voluntary manslaughter in 1993 and service of his stipulated sentence, Villa was ordered deported in 1997 at a group hearing before an immigration judge in El Centro, California. He was physically removed in 1999 but subsequently reentered the United States without permission in 2001. On May 3, 2008, Villa was arrested by local law enforcement following a traffic stop. The next day, the government determined that Villa was "subject to removal by reinstatement of the prior [1997] order," pursuant to 8 U.S.C. § 1231(a)(5) and 8 C.F.R. § 241.8.

Villa concedes that he was provided notice and an opportunity to contest reinstatement on May 4, 2008, as required by 8 C.F.R. § 241.8(b). His signature appears on the Notice of Intent/Decision to Reinstate Prior Order form, beside the statement, "I do not wish to make a statement contesting this determination." The government did not, however, proceed at that point with the actual removal. Instead, the government decided to prosecute Villa for illegal reentry.

Before the district court on the illegal reentry charge, and now with the assistance of counsel, Villa collaterally attacked his 1997 removal order. *See* 8 U.S.C. § 1326(d); *United States v. Mendoza-Lopez*, 481 U.S. 828, 837–38 (1987)

(permitting an alien to seek review of the deportation order used as a predicate element of an illegal reentry offense if he was denied judicial review of prior removal proceedings). He contended that due process violations in the underlying removal proceedings precluded him from obtaining judicial review of his 1997 deportation order. The government conceded that Villa was eligible in 1997 for relief under Immigration and Nationality Act ("INA") § 212(c) and that the Immigration Judge did not inform him of that fact. But, the government argued § 212(c) relief was not plausible at the time of the immigration hearing, which predated *INS v. St. Cyr*, 533 U.S. 289 (2001), and thus Villa could not show prejudice.

The district court rejected the government's arguments, finding: (1) that Villa had demonstrated a deprivation of his right to counsel in the group immigration hearing; and (2) that Villa was prejudiced by the resulting due process violation, because he was eligible for relief under § 212(c) at the time of his removal proceedings, and was not so informed. Consequently, the district court held, "the outcome of [his] immigration proceeding was potentially affected by the denial of his right to counsel."[1] The court held the 1997

---

[1] "[T]o mount a successful collateral attack on a prior removal order under § 1326(d), an alien who was convicted of an aggravated felony and was not properly advised of his right to counsel or did not waive this right must show that he was actually prejudiced by this due process violation," *United States v. Reyes-Bonilla*, 671 F.3d 1036, 1049 & n.11 (9th Cir. 2012), *cert. denied*, 133 S. Ct. 322 (2012). At the same time, however, a petitioner need not demonstrate prejudice as a result of a deprivation of the right to counsel to prevail on a petition for review of a removal order. *See Montes-Lopez v. Holder*, 694 F.3d 1085, 1086, 1090, 1093–94 (9th Cir. 2012).

removal order invalid as the predicate for criminal prosecution under § 1326 and so, on October 9, 2008, dismissed Villa's indictment.

On October 10, 2008, the day after Villa's criminal proceedings were dismissed, immigration officials "reinstated on today's date" the "prior order of removal by an Immigration Judge," and Villa was physically removed. Villa was neither notified at that point that the order was going to be issued and executed nor given an opportunity to object, either in writing or orally, to the reinstatement. He was denied such opportunity despite the very relevant development that occurred in the five months since reinstatement proceedings were initiated—namely, the district court's determination that the 1997 removal order was constitutionally infirm.

ICE was aware of the criminal prosecution from the outset. The Record of Deportable/Inadmissible Alien, Form I-213, dated May 4, 2008, indicated that Villa was "being held in DHS custody pending criminal prosecution for violation of 8 U.S.C. § 1326." But the addendum to the form,

---

Because Villa does not petition for review of the 1997 removal order in this court, we need not determine at this stage whether he was plausibly eligible for relief under § 212(c) at the time of his immigration hearing. In any event, the record does not contain sufficient information about the nature of Villa's criminal conviction or the equities of his case to enable us to make such a determination. Nor need we resolve whether Villa must demonstrate prejudice to obtain relief. Rather, as discussed *infra*, our question is whether Villa's *reinstatement* proceedings accorded him adequate due process, given the discretion available to immigration agents as to how to pursue removal of an alien following the alien's successful collateral challenge to the underlying removal order as part of a § 1326 prosecution.

dated October 10, 2008, reflects confusion regarding the result of that criminal case. The addendum correctly noted, "On October 09, 2008, Subject's case was dismissed for violation of 8 USC 1326(a) — Deported Alien Found in the United States." It went on, however, to state erroneously that Villa "*served* 156 days confinement in federal custody *for violation of 8 USC 1326(a) — Deported Alien Found in the United States*," implying that Villa had been convicted of illegal reentry (emphases added). The addendum nowhere indicated the grounds on which the § 1326 indictment was dismissed or evidenced any awareness by ICE officials that the district court had held the original removal order invalid. It concluded with the statement: "Subject's prior order of removal by an Immigration Judge will be reinstated on today's date." Villa was immediately removed.

This petition for review followed.

## II.

The INA's reinstatement provision, 8 U.S.C § 1231(a)(5), specifically bars relitigation of the merits of the reinstated removal order—i.e. determination of an alien's removability or eligibility for relief.[2] Accordingly, except where

---

[2] The provision states in full:

> If the Attorney General finds that an alien has reentered the United States illegally after having been removed or having departed voluntarily, under an order of removal, the prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed, the alien is not eligible and may not apply for any relief

constitutional claims or questions of law arise in the context of reinstatement and "the petitioner can demonstrate a 'gross miscarriage of justice' in the [original removal] proceedings," *Garcia de Rincon*, 539 F.3d at 1138,[3] our review of a reinstatement order is limited to assessing ICE's determination of the factual predicates for reinstatement: "(1) [that] petitioner is an alien, (2) who was subject to a prior removal order, and (3) who illegally reentered the United States." *Morales-Izquierdo v. Gonzales*, 486 F.3d 484, 495–96 (9th Cir. 2007) (en banc).

Under 8 C.F.R. § 241.8(a), the regulation implementing 8 U.S.C. § 1231(a)(5), the determination whether an alien meets the factual predicates for reinstatement is made by an immigration agent, not a judge; an alien has no right to be heard by a judge prior to reinstatement of a removal order. *See Morales-Izquierdo*, 486 F.3d at 493–95, 497 (upholding

---

under this chapter, and the alien shall be removed under the prior order at any time after the reentry.

8 U.S.C. § 1231(a)(5).

[3] Although § 1231(a)(5) limits the scope of judicial review of reinstated removal orders, § 1252(a)(2)(D) reinstates this court's jurisdiction over certain constitutional claims and questions of law. *See Garcia de Rincon*, 539 F.3d at 1138 (citing §1252(a)(2)(D)); *see also Martinez-Merino v. Mukasey*, 525 F.3d 801, 804 (9th Cir. 2008) (applying a gross miscarriage of justice standard without deciding whether § 1252(a)(2)(D) "vests circuit courts with the ability to review reinstated removal orders"); *Lorenzo v. Mukasey*, 508 F.3d 1278, 1282 (10th Cir. 2007); *Debeato v. Att'y Gen. of the U.S.*, 505 F.3d 231, 235 (3d Cir. 2007); *Ramirez-Molina v. Ziglar*, 436 F.3d 508, 513–14 (5th Cir. 2006); *cf. Robledo-Gonzales v. Ashcroft*, 342 F.3d 667, 682 n.13 (7th Cir. 2003) (discussing the gross miscarriage of justice standard applied to collateral attacks on prior deportation proceedings).

the validity of 8 C.F.R. § 241.8 under the INA and the Constitution). An alien is, however, entitled to notice and an opportunity to make "a written or oral statement contesting the determination." § 241.8(b). Although we have held that this streamlined reinstatement procedure does not offend due process, we expressly "[left] open the possibility that individual petitioners may raise procedural defects in their particular cases." *Morales-Izquierdo*, 486 F.3d at 496.

Even though an alien is not *entitled* to a hearing before an immigration judge on the issue of reinstatement of a prior removal order, nothing in 8 U.S.C. § 1231(a)(5) or its implementing regulations deprives the agency of discretion to afford an alien a new plenary removal hearing. "Reinstatement of a prior order of removal is not automatic." *Alcala v. Holder*, 563 F.3d 1009, 1013 (9th Cir. 2009). Nor is it obligatory: "Under 8 U.S.C. § 1231(a)(5), if the Attorney General finds an alien has reentered this country illegally after having been removed . . . the prior order *can* be reinstated from its original date," provided the requirements of 8 C.F.R. § 241.8(a) and (b) have been satisfied. *Id.* (emphasis added); *accord Galindo-Romero v. Holder*, 640 F.3d 873, 879 (9th Cir. 2011). Particularly when there is any question about whether the requirements of § 241.8 have been satisfied, and even when they have been, an ICE officer may decide to forgo reinstatement of a prior order of removal in favor of initiating new removal proceedings, with the accompanying procedural rights to counsel and a hearing in immigration court. *See* 8 U.S.C. § 1229a(b)(4) (describing an alien's rights in removal proceedings).

ICE regularly exercises "prosecutorial discretion" in "a broad range of discretionary enforcement decisions," including "deciding to issue, reissue, serve, file, or cancel a

Notice to Appear (NTA) [and] . . . seeking expedited removal or other forms of removal by means other than a formal removal proceeding in immigration court." Memorandum from John Morton, Director, ICE, on Exercising Prosecutorial Discretion Consistent with the Civil Immigration Enforcement Priorities of the Agency for the Apprehension, Detention and Removal of Aliens, at 2 (June 17, 2011). Immigration officers "who have authority to institute immigration removal proceedings or to otherwise engage in civil immigration enforcement," *id.* at 3, "are not only authorized by law but expected to exercise discretion in a judicious manner at all stages of the enforcement process," Memorandum from Doris Meissner, Commissioner, Immigration and Naturalization Service, on Exercising Prosecutorial Discretion, at 1 (Nov. 17, 2000). Thus, ICE agents, to whom § 1231(a)(5) delegates the decision to reinstate a prior removal order, may exercise their discretion not to pursue streamlined reinstatement procedures.

## III.

Villa does not contest the factual predicates for the reinstatement order. Nor has he asserted a gross miscarriage of justice in the underlying immigration hearing, which could justify this court's review of the constitutionality of the prior removal order.[4] Instead, Villa challenges the propriety of

---

[4] The government contends that even if we had jurisdiction to review Villa's 1997 removal order under § 1252(a)(2)(D), that jurisdictional savings clause does not apply when an alien's petition for review is untimely under § 1252(b)(1), because not filed within thirty days of the final order of removal. Because this case does not directly involve a challenge to the 1997 order, *see supra* note 1, we need not decide whether § 1252(b)(1) would preclude such review.

reinstating a removal order that has been invalidated on constitutional grounds for purposes of criminal prosecution.[5]

This precise situation has not arisen in any reported cases of which we are aware. The government explained at oral argument a likely reason for that gap: "In many cases where the district court does dismiss the indictment [ICE officers] go ahead and put the alien in regular removal proceedings." That is, rather than reinstating an order found to be an invalid predicate for a criminal reentry prosecution, the agency often exercises its discretion to initiate plenary removal proceedings (with the requisite notice, hearing before an immigration judge, right to appeal to the Board of Immigration Appeals, and right to seek judicial review in a court of appeals), following dismissal of a § 1326 indictment because of a successful collateral attack on the underlying removal order. *See* 8 U.S.C. §§ 1229, 1229a. Here, however, ICE reinstated Villa's prior order and executed it as soon as his criminal case was dismissed, without providing Villa an opportunity to explain the developments in district court or correct any misimpressions regarding those developments, and, it appears, without independently reconsidering its use of expedited proceedings in light of the constitutional

---

[5] Judge Tallman accuses us of advocacy, on the theory that "Villa failed to make this due process challenge in his briefing." Dissent at 27; *see also* Dissent at 22 n.1. Not so. Before this Court, Villa complained that immigration officials "did not provide . . . a meaningful opportunity to contest the reinstatement" of his removal order, as 8 C.F.R. § 241(b) typically provides, and he sought remand "for proceedings that comport with Constitutional due process." Otherwise, reinstatement amounted to "a continued violation of . . . Constitutional due process rights." Villa thus asserted a constitutional violation curable only through additional process, consistent with § 241.8(b). We therefore must, and do, adjudicate the merits of that assertion.

infirmities in the underlying immigration hearing identified by the district court.

As explained, an incorrect statement on the addendum to the Form I-213 states that Villa served time for a § 1326 conviction. This statement indicates that the immigration agents responsible for executing Villa's reinstatement order were either unaware of, or misinformed about, the district court's findings regarding the prior removal proceedings, and so almost surely did not take them into account in determining how to proceed. Certainly, the Form did not explain *why* Villa's criminal case was dismissed.[6] The government agreed, at argument, that the agency ordinarily would not have done what it did here.

To be sure, the pendency of reinstatement proceedings does not provide an alien with a new avenue to challenge the underlying removal order. As we made clear in *Morales-Izquierdo*, allowing an alien to manufacture an opportunity to contest his earlier removal by reentering the country illegally, thereby triggering removal proceedings anew, would create perverse incentives. *See* 486 F.3d at 498. But we have not considered a situation like the present one, in which the government itself invites judicial scrutiny of the underlying

---

[6] Judge Tallman's contrary reading of the I-213 addendum interpolates words found nowhere in the actual language. *Compare* I-213 Form addendum (Villa "*served* 156 days confinement in federal custody *for violation of* 8 USC 1326(a)"), *with* Dissent at 26 n.4 (concluding that "the officer noted Villa *had been detained* for 156 days *awaiting trial on the charge* that he violated § 1326 . . . ." (emphases added)). Just as we assume in other contexts that "a reasonably competent public official should know the law," *Harlow v. Fitzgerald*, 457 U.S. 800, 819 (1982), we also assume that immigration officials know the legal difference between serving time for a particular violation and awaiting trial.

removal order by instigating a criminal prosecution under § 1326. We conclude that when, as a result of such scrutiny, a district court finds constitutional infirmities in the prior removal proceedings that invalidate the prior removal for purposes of criminal prosecution, the agency cannot simply rely on a pre-prosecution determination to reinstate the prior removal order. Instead the agency must—as it may well ordinarily do—(1) provide the alien with an opportunity *after* the criminal prosecution is dismissed to make a written or oral statement addressing the expedited reinstatement determination in light of the facts found and the legal conclusions reached in the course of the criminal case; and (2) independently reassess whether to rely on the order issued in the prior proceedings as the basis for deportation or instead to instigate full removal proceedings.[7]

We so conclude for the following reasons: The regulation implementing 8 U.S.C. § 1231(a)(5) requires the immigration officer effecting reinstatement to "consider all relevant evidence, including statements made by the alien and any evidence in the alien's possession." 8 C.F.R. § 241.8(a)(3). The alien must be allowed to make a statement contesting the reinstatement determination, and the officer "shall consider whether the alien's statement warrants reconsideration of the determination." § 241.8(b).

Those regulatory requirements respect an unlawfully present alien's right to be heard prior to removal, a right which the Supreme Court has long recognized as grounded in

---

[7] Once ICE complies with these constitutional requirements, it may exercise its lawful discretion however it sees fit. In this sense, we agree with our dissenting colleague that the agency need not "reach a different result" on remand. Dissent at 28.

the Due Process Clause.**[8]**   Due process, in turn, entitles an unlawfully present alien to consideration of issues relevant to the exercise of an immigration officer's discretion.  *Larita-Martinez v. INS*, 220 F.3d 1092, 1095 (9th Cir. 2000), for example, held that due process required the Board of Immigration Appeals to consider "all relevant evidence submitted on appeal" when reviewing the *wholly discretionary* denial of an application for suspension of deportation.**[9]**

---

**[8]** *See, e.g.*, *Chew v. Colding*, 344 U.S. 590, 597–98 (1953) ("Although Congress may prescribe conditions for [an alien's] expulsion and deportation, not even Congress may expel him without allowing him a fair opportunity to be heard."); *Yamataya v. Fisher*, 189 U.S. 86, 101 (1903) ("[I]t is not competent for . . . any executive officer . . . arbitrarily to cause an alien who has entered the country, and has become subject in all respects to its jurisdiction, and a part of its population, although alleged to be illegally here, to be taken into custody and deported without giving him all opportunity to be heard upon the questions involving his right to be and remain in the United States."); *cf. Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 211 (1953) ("[A]liens who have once passed through our gates, even illegally, may be expelled only after proceedings conforming to traditional standards of fairness encompassed in due process of law.").

**[9]** The dissent marshals *Heckler v. Chaney*, 470 U.S. 821, 831 (1985), to dispute the existence of any cognizable liberty interest "in how an agency exercises its purely discretionary decision on whether to prosecute." Dissent at 23.   *Heckler*, however, held only that an administrative agency's decision *not* to act was unreviewable under 5 U.S.C. § 701(a)(2), explaining "when an agency refuses to act it generally does not exercise its *coercive* power over an individual's liberty or property," and thus leaves the courts with little to review.  *Heckler*, 470 U.S. at 832, 837–38. In contrast, where, as here, an agency has taken or is proposing to take action, "that action itself provides a focus for judicial review."  *Id.* at 832. *Heckler* thus does not relieve the courts of their duty to review the constitutionality of agency *action*, whether discretionary or otherwise, when called upon to do so.

For the requirements of § 241.8(a)(3), (b) to function as the requisite "procedural safeguards" of the alien's right to due process in the context of streamlined proceedings, *see Morales-Izquierdo*, 486 F.3d at 496, they must apply at the relevant time. "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (internal quotation marks omitted). For Villa to have had a meaningful opportunity to address the proposed reinstatement of his removal order, then, he must have been afforded that opportunity at a time and in a manner that would allow him to present pertinent information. As the government indicated at oral argument, the district court's invalidation of Villa's 1997 removal order as a basis for § 1326 prosecution, due to constitutional infirmities in the original removal proceedings, is ordinarily pertinent to the agency's decision as to whether and how to proceed with his removal.

Moreover, the agency must consider all favorable and unfavorable factors relevant to the exercise of its discretion; failure to do so constitutes an abuse of discretion. *See An Na Peng v. Holder*, 673 F.3d 1248, 1253 (9th Cir. 2012) (the BIA abuses its discretion when it fails to consider all relevant factors bearing on the balance of equities or an application for relief); *Xiao Fei Zheng v. Holder*, 644 F.3d 829, 833 (9th Cir. 2011) (same); *cf. United States v. $11,500.00 in U.S. Currency*, 710 F.3d 1006, 1011 (9th Cir. 2013) (a district court abuses its discretion if it fails to consider factors relevant to the exercise of its discretion). If the procedures used by ICE do not assure that the decision-makers obtain the requisite information before the decision is made, then it is unlikely that the decision made will be a proper one under the abuse of discretion standard.

The Third Circuit has considered a somewhat analogous circumstance, in which an alien contested reinstatement on the asserted grounds that his prior removal order was invalidated by a court and that he did not reenter the country illegally. *See Ponta-Garcia v. Att'y Gen. of the U.S.*, 557 F.3d 158, 164 (3d Cir. 2009). Recognizing the petitioner's atypical circumstances, the Third Circuit remanded the case to ICE for consideration of the alien's assertions. *Id.* at 165 (citing 8 C.F.R. § 241.8(a)(3)). The court observed that although reinstatement pursuant to the streamlined procedures adopted by Congress will be uncontested in most cases, in the unusual instance in which a petitioner raises issues that could affect whether ICE pursues removal without a prior hearing, "more is required [from the agency] than it appears was done here." *Id.*

IV.

The government acknowledges that, had it known of the district court's findings, it quite possibly would have exercised its discretion not to pursue reinstatement of Villa's 1997 removal order. Consequently, Villa was prejudiced by the ICE agents' misinformation or lack of information regarding his criminal prosecution, as well as by the absence of an opportunity to contest the reinstatement determination at a meaningful time—namely, before the reinstatement order finally issued and was executed, and after new, relevant circumstances had arisen. Accordingly, we remand to ICE to provide that opportunity and to reconsider its reinstatement determination in light of the district court's findings regarding Villa's 1997 removal proceedings. We express no view as to the outcome of that determination on remand.

The petition is **GRANTED**, the reinstatement order is **VACATED,** and we **REMAND** to ICE for reconsideration and further proceedings consistent with this disposition.

---

TALLMAN, Circuit Judge, dissenting:

The alien, a convicted killer who illegally re-entered the United States after his prior deportation, has once again been removed after the district court dismissed his 2008 criminal re-entry charge because the 1997 removal order was technically flawed. Congress has by statute strictly limited what process is due to a petitioner who re-enters after a prior deportation. Our court sitting en banc has carefully limited the scope of our review of reinstated removal orders. *See generally Morales-Izquierdo v. Gonzales*, 486 F.3d 484 (9th Cir. 2007) (en banc). My colleagues in the majority nonetheless create a new procedural rule by judicial legislation, which the Supreme Court has held we may not do.

The majority holds that whenever the United States chooses to criminally prosecute an alien who unlawfully entered the country and fails in that prosecution, an immigration officer—who has already complied with all of the statutory and regulatory requirements for reinstatement of a prior removal order—must give the alien a new opportunity to implore the officer to decline reinstatement and instead open new removal proceedings. It might be a perfectly sensible rule if Congress or the agency prescribed it. But neither Congress nor the agency has done so. Instead, the majority's new rule has only one source: the whole cloth from which the majority has woven it.

The Supreme Court has told us it is "improper simply to impose deportation procedures . . . because the reviewing court may find them preferable." *Landon v. Plasencia*, 459 U.S. 21, 35 (1982). In an effort to impose its preferred procedures into ICE's process for reinstatement of removal orders, the majority has distorted constitutional due process requirements and undercut controlling en banc precedent. I respectfully dissent.

I

In 1997, the government removed Alejandro Israel Villa-Anguiano ("Villa") after he finished serving his sentence for voluntary manslaughter. Villa does not dispute that he was the alien subject to that removal order. Nor does he dispute that in 2001, he knowingly re-entered the country without permission and remained until he was apprehended on May 3, 2008. And he cannot dispute that the government provided him with notice and an opportunity to be heard regarding the reinstatement of his prior removal order—an opportunity he waived on May 4, 2008, when he signed underneath a checked box stating, "I do not wish to make a statement contesting this determination."

The majority concedes that as of that date, the government needed no more to exercise its discretion to reinstate his prior order of removal and summarily deport him from the United States. However, the immigration officer could not remove Villa immediately because the United States opted to prosecute Villa for criminal re-entry under 8 U.S.C. § 1326. The majority now holds that when the government chose to criminally prosecute Villa and the district court later dismissed the charge after Villa brought a collateral attack on the 1997 removal order, this created a

new requirement that the immigration officer give Villa yet *another* opportunity to be heard. The officer must extend this opportunity, says the majority, not so that Villa may contest his eligibility for reinstatement, but rather so that he may argue the agency should exercise its prosecutorial discretion to instead open new removal proceedings. The majority must concede this requirement has no basis in either statutory or regulatory law. But it concludes ICE nonetheless abused its discretion and remands so the agency must reconsider its prosecutorial decision, even though Villa is long gone.

The reinstatement statute requires the Department of Homeland Security to do nothing more to reinstate the removal order that Villa knowingly flaunted. In 8 U.S.C. § 1231(a)(5), Congress "explicitly insulate[d] the removal orders from review[] and generally foreclose[d] discretionary relief from the terms of the reinstated order." *Fernandez Vargas v. Gonzales*, 548 U.S. 30, 35 (2006). The statute provides in no uncertain terms:

> If the Attorney General finds that an alien has reentered the United States illegally after having been removed or having departed voluntarily, under an order of removal, the prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed, the alien is not eligible and may not apply for any relief under this chapter, and the alien shall be removed under the prior order at any time after the reentry.

8 U.S.C. § 1231(a)(5).

The Department of Homeland Security has promulgated 8 C.F.R. § 241.8 to implement the reinstatement statute. Under the regulation, the immigration officer who issues the reinstatement order must analyze three criteria.

First, the officer must confirm that the alien has been subject to a prior order of removal. 8 C.F.R. § 241.8(a)(1). This requires the officer to obtain the prior order, which the officer in this case did.

Second, the officer must confirm the identity of the alien—that is, make sure that the person in question and the alien who was previously removed are in fact one and the same. *Id.* § 241.8(a)(2). Villa does not dispute that the officer did this too.

Third, the officer must confirm that the alien "unlawfully reentered the United States." To do this, the officer must "consider all relevant evidence" and attempt to verify any claim that the alien "was lawfully admitted," including a check of any databases available to the officer. *Id.* § 241.8(a)(3). Villa, of course, made no such claim, and how could he? Subject to a removal order that required him to stay outside of the United States, Villa nonetheless surreptitiously re-entered the country. He did so without the permission of the United States government. He therefore re-entered the country "unlawfully."

The district court proceedings could not render Villa's re-entry "lawful." The district court had jurisdiction only to determine whether Villa's re-entry was *criminal*, not whether it was *lawful*. The district court's conclusion that Villa did not commit a new crime in no way alters the inquiry for the immigration officer conducting a reinstatement, which is

simply: did this alien violate a removal order when he entered the United States? The answer unquestionably is yes. Villa unlawfully re-entered the United States. If the agency decides he must go, then he must go.

Therefore, both the laws enacted by Congress and the Department of Homeland Security's permissible construction of those laws allowed the immigration officer to reinstate Villa's prior order of removal, regardless of whether the district court concluded that Villa's re-entry also constituted a federal crime. On the limited review we may conduct of a reinstatement proceeding, this suffices to deny relief. *Morales-Izquierdo*, 486 F.3d at 491.

II

The majority implicitly agrees that under the law as it currently stands, Villa is *eligible* for reinstatement. My colleagues must acknowledge that although a district court may determine that a removal order does not validly support a criminal prosecution, that same court has no jurisdiction to grant relief from an administrative order of removal. The majority also knows that under our en banc decision in *Morales-Izquierdo v. Gonzales*, we do not allow aliens who have defied removal orders and re-entered the United States to put themselves in a better position than aliens "who respect our laws and wait patiently outside our borders seeking lawful admission." 486 F.3d at 498. So without any statutory or regulatory foundation to grant relief, the majority falls back on a dubious procedural due process analysis.

If I understand the majority argument, it proceeds in three steps. First, the immigration officer has the discretion to choose to initiate new removal proceedings instead of

reinstatement, even if the alien is, by statute, already susceptible to immediate reinstatement. Second, if the district court dismisses the criminal charge for illegal re-entry because the alien demonstrated fundamentally unfair infirmities in the original deportation order, the immigration officer may be more likely to start new removal proceedings instead of choosing reinstatement. Therefore, if the alien succeeds in his defense to the criminal charge, the Due Process Clause now requires the immigration officer to give the defendant yet another opportunity to be heard—not to argue that the alien is ineligible for reinstatement (because 8 U.S.C. § 1231(a)(5) and 8 C.F.R. § 241.8 both say Villa clearly is eligible), but to instead argue that new removal proceedings would be the more sensible exercise of the agency's prosecutorial discretion.[1]

One very important analytical step is missing: the majority provides next to no analysis regarding *why* the Due Process Clause compels such a result. Sure, the majority affords us a cursory citation to *Mathews v. Eldridge*, 424 U.S. 319 (1976), a case governing the interest in Social Security benefits, "a statutorily created 'property' interest." *Id.* at 332. But it provides no case telling us why the Due Process Clause requires that an agency must provide an alien the opportunity

---

[1] The majority's due process argument is a nice piece of advocacy—and an argument I fail to find anywhere in Villa's briefing. I thought the rule was that petitioners for relief waive any arguments they fail to raise in briefing, *see Lopez-Vasquez v. Holder*, 706 F.3d 1072, 1079–80 (9th Cir. 2013) ("Lopez-Vasquez waived his challenge to the BIA's denial of his motion to reopen by failing to argue it in his brief."), but the majority believes a few scattered references to "due process" do all the necessary work. The government, meanwhile, was not provided any meaningful opportunity to respond to the substance of the due process argument the majority has now conjured into an opinion.

to tell the agency how it should exercise its prosecutorial discretion.

Although aliens are entitled to due process of law, they "must in the first instance possess a liberty or property interest." *Valencia-Alvarez v. Gonzales*, 469 F.3d 1319, 1330 n.13 (9th Cir. 2006). Although we have considered aliens to have such an interest when they are eligible for discretionary relief from removal, we certainly have never held they have any liberty or property interest in how an agency exercises its purely discretionary decision on whether to prosecute. "[A]n agency's decision not to prosecute or enforce, whether through civil or criminal process, is a decision generally committed to an agency's absolute discretion." *Heckler v. Chaney*, 470 U.S. 821, 831 (1985). This common-sense conclusion derives from the steadfast principle that even citizens are not "entitled to judicial oversight or review of the decision to prosecute." *Albright v. Oliver*, 510 U.S. 266, 274 (1994) (quoting *Gerstein v. Pugh*, 420 U.S. 103, 114 (1975)). Just as a criminal suspect has no procedural due process right to a hearing before a prosecutor to argue for a more lenient charge, Villa possesses no right to plead for any more than the law provides. This is a fundamental separation of powers issue, which the majority ignores when declaring remand is nonetheless required because the agency somehow abused its absolute discretion.

"While aliens have a right to fair procedures, they have no constitutional right to force the government to re-adjudicate a final removal order by unlawfully reentering the country." *Morales-Izquierdo*, 486 F.3d at 498. In a reinstatement proceeding, "an alien's rights and remedies are severely limited." *Id.* at 497. Villa possesses no fewer rights today, having had his removal order reinstated, than he did the day

he unlawfully re-entered the country because "[t]he reinstatement order imposes no civil or criminal penalties, creates no new obstacles to attacking the validity of the removal order, and does not diminish petitioner's access to whatever path for lawful entry into the United States might otherwise be available to him under the immigration laws." *Id.* at 498 (citations omitted).

Those laws grant Villa no entitlement to new removal proceedings. Perhaps Villa would possess a more concrete interest if the agency's regulations in any way spelled out this discretion which the majority insists the agency regularly practices.**[2]** Yet the majority cites no statute or regulation that delineates the criteria by which the agency must exercise its prosecutorial discretion specifically in the context of reinstatement—or that specifies how Villa's successful defense at his criminal trial should impact that discretionary administrative decision whether to once again remove him. The majority instead misleadingly cites to the requirement in 8 C.F.R. § 241.8(a)(3) that the immigration officer "consider all relevant evidence," when it can easily ascertain that the regulation only requires the officer to consider all evidence relevant to determining whether the alien unlawfully re-entered the country—which Villa unquestionably did. The district court's conclusion in sustaining his challenge to the criminal indictment was irrelevant to that administrative determination.

---

**[2]** The absence of any statutory or regulatory standard whatsoever establishing this discretion easily distinguishes this case from *Larita-Martinez v. INS*, 220 F.3d 1092 (9th Cir. 2000), where federal law clearly established the petitioner's right to seek suspension of deportation, even if it was "wholly discretionary," and the alleged violation occurred during an appeal to the BIA, which was provided to the petitioner by law.

To the extent the majority relies on an internal ICE memorandum—which does not specifically address reinstatement—"[i]t is well settled that internal policy manuals of federal agencies do not generally create due process rights in others." *James v. U.S. Parole Comm'n*, 159 F.3d 1200, 1206 (9th Cir. 1998). The memorandum itself explains that "there is no right to the favorable exercise of discretion by the agency," and therefore the memorandum cautions that it "may not be relied upon to create any right or benefit, substantive or procedural." Memorandum from John Morton, Director, ICE, on Exercising Prosecutorial Discretion Consistent with the Civil Immigration Enforcement Priorities of the Agency for the Apprehension, Detention and Removal of Aliens, at 6 (June 17, 2011).[3]

The standards that are *actually* set out in regulatory and statutory law establish that when ICE reinstates an alien's removal order, the alien only possesses an interest in how the ICE officer resolves three questions: (1) whether the alien was subject to a prior order of removal; (2) whether this alien is *the* alien described in that order; and (3) whether the alien illegally re-entered the country. On May 4, 2008, when he waived his opportunity to be heard, Villa and the agency possessed all of the information that would be relevant to those three determinations. His opportunity to be heard, at that time, could not have been more meaningful.

---

[3] That memorandum also *supports* the immigration officer's decision in Villa's case. The memorandum lists several "negative factors" that should "prompt particular care and consideration" when ICE officers are "exercising prosecutorial discretion." They include "serious felons" and aliens like Villa-Anguiano "with a record of illegal-re-entry." *Id.* at 5. If these are the factors that influence the exercise of discretion, how can my colleagues say that discretion was abused here?

The majority agrees that Villa meets all of the requirements for reinstatement of a removal order under current statutory and regulatory law and that he waived his opportunity to contest whether those requirements were met. So how could the agency have abused its discretion by complying with federal law? Regardless of the answer, we lack jurisdiction to review an abuse of discretion argument that is merely recharacterized as a due process argument, *Torres-Aguilar v. INS*, 246 F.3d 1267, 1271 (9th Cir. 2001)—precisely what the majority opinion does.[4]

To hold that Villa has a liberty interest in any determination other than whether he unlawfully re-entered the United States in defiance of a removal order would "create a new and wholly unwarranted incentive for aliens who have previously been removed to reenter the country illegally in order to take advantage of this self-help remedy." *Morales-Izquierdo*, 486 F.3d at 498. Because there is no foundation in our due process jurisprudence to hold that an alien possesses

---

[4] There is no basis for the majority's conclusion that the immigration official proceeded on bad information regarding Villa's criminal prosecution. The addendum to the Record of Deportable/Inadmissible Alien stated that Villa "served 156 days confinement in federal custody for violation of 8 USC 1326(a) – Deported Alien Found in United States." But the form *also* stated that "Subject's case was *dismissed for violation of 8 USC 1326(a)* – Deported Alien Found in the United States." (emphasis added). If the majority intends to take the first sentence at face value, then it must believe as well that the "reasonably competent" immigration officer somehow believed that Villa's conviction was *dismissed* because the court found Villa *violated* the statute. But that can't be right. It is more reasonable to read the two sentences in conjunction and conclude that the officer noted Villa had been detained for 156 days awaiting trial on the charge that he violated § 1326, and that five months later the court dismissed the charge.

such a right, I cannot join a majority opinion that so casually accords this newly minted right to Villa.

Even if such a liberty interest existed, an alien bears the burden of proving the alleged violation prejudiced his or her interest. *Cano-Merida v. INS*, 311 F.3d 960, 965 (9th Cir. 2002). Because Villa failed to make this due process argument in his briefing—which the majority has chosen to excuse and make for him—he made no showing of prejudice. But the majority argues that prejudice exists because the agency "quite possibly would have exercised its discretion not to pursue reinstatement of Villa's 1997 removal order." Majority Op. at 16.

This assertion opens Pandora's box. Let us not forget that as he stands today, Villa—who committed a serious felony offense involving the taking of a life—cannot be criminally prosecuted for re-entering the United States. He can enter the country illegally as he pleases, and under his current removal order, the only thing the United States government can do is reinstate that order of removal and deport him again. It is highly unlikely that in any new removal proceedings, the agency would grant discretionary relief to a convicted killer who also ignores prior deportations by returning illegally. It is far more likely that Villa would be removed once again, but this time with a new removal order that would carry heavy criminal consequences for his next re-entry. Although Villa has no right to insist on such a proceeding, the majority has overstated the damage, if any, that the reinstatement of Villa's removal order has caused to his interests.

### III

The majority concedes a point that should be absolutely clear:  on remand, ICE has absolutely no obligation to reach a different result.  Although by now the government has surely recognized it cannot punish Villa with anything more than deportation, it may, under 8 U.S.C. § 1231(a)(5) and 8 C.F.R. § 241.8, reinstate his prior order of removal because Villa meets each of the statutory and regulatory requirements for reinstatement.

The majority opinion amounts to no more than a thinly veiled suggestion, cloaked in the mantle of due process, that ICE reconsider its decision to reinstate the prior removal order and instead open new removal proceedings from which years of litigation will ensue.  Perhaps that would be the most sensible course of action, so that next time Villa would have no technical defense to a new felony conviction under § 1326. But that is a decision for the agency to make by balancing its interest in the use of its limited resources with its interest in securing a removal order that can better support future criminal charges.  Courts have no right to dictate that executive decision or to establish new criteria the Executive Branch must employ to make it.

The majority opinion unnecessarily intrudes on the Executive Branch's administration of immigration policy and not only tells the Department of Homeland Security the criteria it must consider in the exercise of its prosecutorial discretion, but it also announces a novel holding that an alien who unlawfully re-enters the country has a due process right to influence the exercise of that prosecutorial discretion.  Its rule adds requirements that have no basis in law.  The Supreme Court has clearly told us not to do this.  *Landon*,

459 U.S. at 35.  Rather than remand on the basis of these nonexistent requirements, I would deny relief and leave Villa no worse off than where he stood before he willfully defied his removal order and unlawfully re-entered the country.  I respectfully dissent.